[S. F. No. 3390.  In Bank.—March 30, 1906.]

## MARTIAL DAVOUST, Appellant, v. CITY OF ALAMEDA, Respondent.

MUNICIPAL CORPORATIONS — LIABILITY FOR NEGLIGENCE. — Although municipal corporations are not liable for the negligence of their officers or servants when acting in their governmental, political, or public capacity, in the absence of a statute permitting it, yet, when the injury arises from the exercise of mere proprietary and private rights, they are liable for negligence, like individuals or private corporations.

ID.—NEGLIGENT OPERATION OF ELECTRIC-LIGHT PLANT — LIABILITY OF CITY FOR DEATH.—A city engaged in operating an electric-light plant owned by it for the purpose of lighting the city, and furnishing electric light to its inhabitants for domestic use, is liable for the death of a person caused by its negligent operation.

ID.—AUTHORITY TO BOARD OF TRUSTEES.—It is immaterial to the liability of the city for the negligent operation of such plant that the authority to maintain it was given to the board of trustees of the city, and not in terms to the city.

ID.—PROOF OF NEGLIGENCE—DEATH FROM LIVE WIRE—WAY OVER VACANT LOT—LICENSE.—It appearing that the death was caused by a live wire negligently allowed by the city to remain upon a beaten path four feet wide over a vacant lot, which had for many years been used by residents of the neighborhood in going from their homes to a railroad station, the deceased must be deemed a licensee in crossing such path, and not a trespasser; and that the death was due to the negligence of the city is sufficiently proved.

APPEAL from a judgment of the Superior Court of Alameda County.  W. E. Greene, Judge.

The facts are stated in the opinion of the court.

J. C. Campbell, W. H. Metson, Reed & Nusbaumer, J. R. Glascock, and J. M. Poston, for Appellant.

M. W. Simpson, and Chapman & Clift, for Respondent.

McFARLAND, J.—This action is to recover damages for the death of plaintiff's wife alleged to have been caused by the negligence of defendant, the city of Alameda, in operating an electric-lighting plant owned by defendant, and used for the purpose of lighting said city and furnishing light to its inhabitants for domestic purposes. The trial court granted a nonsuit and gave judgment for defendant, and from this judgment plaintiff appeals. There is a bill of exceptions which presents the evidence and the rulings of the court.

It does not appear upon what ground the nonsuit was granted; but the main point argued by counsel for respondent is that because the defendant is a municipal corporation it is not liable to pay any damages, even though the death of plaintiff's wife was caused by the negligent operation of the electric plant. And in support of this contention respondent relies on *Winbigler* v. *City of Los Angeles,* 45 Cal. 36; *Denning* v. *State,* 123 Cal. 316, [55 Pac. 1000]; *Chope* v. *City of Eureka,* 78 Cal. 588, [21 Pac. Rep. 364, 12 Am. St. Rep. 113], and the cases there cited. These cases undoubtedly establish the rule in this state, although it has been held differently in some other jurisdictions, that a municipal corporation, when exercising governmental functions as an agent of the sovereign power, is not liable for damages caused by the negligence of its employees, unless it is expressly so made liable by statute. But this rule applies to a municipal corporation only when acting in its governmental, political, or public capacity as an instrumentality intrusted by the state with the subordinate control of some public affair. Such a corporation, however, has a double character—governmental, and also proprietary and private—and when acting in the latter capacity its liabilities arising out of either contract or tort are the same as those of natural persons or private corporations. And while we have been referred to no case in this state where the proposition last stated was directly involved, yet in all the cases from this state cited by respondent the acts complained of were connected with the exercise of what has uniformly been held to be governmental functions, such as maintenance of public streets and roads, protection from fire, etc. However, the distinction has been frequently recognized and stated in the California decisions. In *Touchard* v. *Touchard,* 5 Cal. 307, the court say: "A corporation, both

by the civil and common law, is a person, an artificial person; and although a municipal corporation has delegated to it certain powers of government, it is only in reference to those delegated powers that it will be regarded as a government. In reference to all other of its transactions, such as affect its ownership of property in buying, selling, or granting, and in reference to all matters of contract, it must be looked upon and treated as a private person, and its contracts construed in the same manner and with like effect as those of natural persons." In *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 469, Justice Field says: "The distinction alluded to refers to the double character of a municipal corporation; its public and political character in which it exercises subordinate and legislative powers, and its private character in which it exercises the powers of an individual or private corporation." In *Ukiah* v. *Ukiah W. and I Co.,* 142 Cal. 179, [75 Pac. 775, 100 Am. St. Rep. 107], this court says: "The distinction between the powers conferred on municipal corporations for public purposes and for the general public good, and those conferred for private corporate purposes, is clearly marked by the decisions." (Citing cases.) In *Denning* v. *State,* 123 Cal. 316, [55 Pac. Rep. 1000], it was held that the state was not liable for injury caused plaintiff by negligence of a board of harbor commissioners, because the latter were exercising purely governmental powers; but the distinction above mentioned was clearly stated. The court said, among other things, that the plaintiff, when injured, was employed in a distinct branch of the service,—"viz. the protection against or extinguishment of fires, which, even in the case of municipal corporations, is uniformly held to be the exercise of a purely governmental function; and there is certainly as strong ground for distinguishing between the different functions of the board as there can be for distinguishing between the different functions of a municipal corporation, in the exercise of some of which the corporation is liable for negligence, while in others it is not." (See, also, *Holland* v. *San Francisco,* 7 Cal. 361; *Argenti* v. *San Francisco,* 16 Cal. 255; *Brown* v. *Board of Education,* 103 Cal. 531, [37 Pac. 503].)

In other jurisdictions the rule that municipal corporations are liable like individuals and private corporations when the injury arises out of their exercise of mere proprietary and

private rights has been extremely and frequently decided. Indeed, the rule has become text-book law. In Dillon on Municipal Corporations (sec. 66) the author, having said that a municipal corporation "possesses a double character; one governmental, legislative, or public; the other, in a sense, proprietary or private," proceeds as follows: "In its governmental or public character, the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself; . . . but in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual." There are numerous authorities to the general point of the distinction between the governmental and the proprietary character of municipal corporations, but it will be sufficient here, on the general question, to refer to the opinion of the supreme court of Oregon in the case of *Esberg Cigar Co.* v. *Portland,* 34 Or. 282, [55 Pac. 961, 75 Am. St. Rep. 651], where the authorities are nearly all cited. (See, also, *South Carolina* v. *United States,* 199 U. S. 437, [26 Sup. Ct. 110, 116].)

And that the respondent, in maintaining and operating its electric plant, was exercising, not its governmental functions, but its proprietary and private rights, is entirely clear. There is obviously no distinction, so far as the law on the subject is concerned, between an electric plant for furnishing light, which is comparatively a new thing, and a gas plant maintained for the same purpose; and it has been directly held that a municipal corporation operating a gas plant is liable for injury caused by its careless management. In Dillon on Municipal Corporations (sec. 954) it is said: "A municipal corporation owning waterworks or gasworks which supply private consumers on the payment of tolls is liable for the negligence of its agents and servants the same as like private proprietors would be"; and ample authority is cited sustaining the text. In *Western S. F. Society* v. *Philadelphia,* 31 Pa. 183, [72 Am. Dec. 730], the Supreme Court of Pennsylvania say: "The supply of gaslight is no more a duty of

sovereignty than the supply of water. Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means. If this power is granted to a borough or a city, it is a special private franchise. . . . The whole investment is the private property of the city, as much so as the lands and houses belonging to it. . . . It [the city] stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred." In *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 469, the court say: "The purchase of gas involves only the exercise of a power of a private corporation; it requires no exercise of any political power. It is as much an act of a private character as if made by a private corporation." In *Esberg Cigar Co.* v. *Portland,* 34 Or. 282, [55 Pac. 961, 75 Am. St. Rep. 651], the facts were that the city of Portland owned and maintained a system of waterworks, and the plaintiff therein brought the action for damages for injuries caused by the negligent management of the said waterworks; and it was contended for defendant "that the waterworks belonged to the city in its public or governmental capacity, and it therefore is not liable in a common-law action for negligence in constructing or maintaining the same." But the court held otherwise, and, after alluding to the distinction above stated, said: "In accordance with this distinction it is quite universally held that when a municipal corporation voluntarily undertakes to construct and maintain water or gas works in pursuance of statutory authority, for the purpose of supplying the inhabitants thereof with water or gas at rates established by the city, it is liable for an injury in consequence of its acts in constructing and maintaining such works, the same as a private corporation or individual." And surely this principle applies as fully to the maintenance of an electric-lighting plant as to the maintenance of waterworks. In the case at bar, the city of Alameda was merely given the optional privilege of constructing and maintaining an electric-lighting plant; no duty was imposed on it to do so. Our conclusion on the main point above discussed is that the respondent cannot escape liability for the negligence averred in the complaint on the ground that it is a municipal corporation.

There are some points made by respondent upon the theory

that defendant would not have been liable even if it had been a private person or corporation, which we will allude to briefly. We would not be justified in holding that the evidence was not sufficient to show that the death of appellant's wife was caused by negligence in operating the electric plant. Whatever the evidence may be on another trial, that which appears in the present record is sufficient to establish the negligence. The contention that appellant cannot recover because his wife at the time of the accident was a trespasser is not maintainable. There was, and for many years had been, a street-railroad station on Monroe Street, and south of that station, and fronting it, there was a vacant uninclosed level lot owned by a person who is in no way involved in this litigation.. Across the vacant lot there was a way, or beaten path, about four feet wide, which had been for many years—more than five years—used by residents in the neighborhood in going from their homes to the said station on Monroe Street. While plaintiff's wife was walking along this path, and when within a .few feet from Monroe Street, she came in contact with a live wire of respondent's electric plant, which was negligently allowed to lie across the path, and was killed by the current. It is not necessary to inquire what would have been the liability of the owner of the lot if he had also owned the electric plant and had been guilty of the negligence which caused her death, although even then the allowance of such a deadly trap probably could not have been excused on the ground that the woman was a trespasser, even if she had been. But no such question arises here. She had a right to be where she was, at least as against every one except the owner of the lot; and the respondent, itself a mere trespasser, is in no position to raise the question as to what duty the owner of the land owes to a trespasser; moreover, she was not a mere trespasser, but a licensee.

Respondent contends that the city was not liable because the grant of authority to maintain the electric plant is given to "the board of trustees of such city," and not, in terms, to the city; but we do not see any force in this contention. A "city" is a mere intangible thing, existing only in legal contemplation; it could not itself use the franchise, and can act only through its governing body, the board of trustees. A grant of a franchise, in terms, to the city, would be in

effect a grant to the body having the power to use it. In *Arnold* v. *San Jose*, 81 Cal. 618, [22 Pac. 877], this court said: "A distinction is made by appellant between cases arising under charters making it the duty of a city, as such, to keep the streets open and in repair, and those which make it the duty of the city council to do so. We are unable to see any merit in the point." And further on in the opinion it is shown that *Winbigler* v. *City of Los Angeles*, 45 Cal. 36, does not hold differently.

We do not think that there was a nonjoinder of plaintiffs; and, as to other points, it is sufficient to say that none of them are, in our opinion, tenable or necessary to be specially noticed.

The judgment appealed from is reversed.

Beatty, C. J., Angellotti, J., Henshaw, J., Lorigan, J., and Sloss, J., concurred.

SHAW, J.—I concur. The rule is well established in this state that, in the absence of a statutory provision permitting it, an action will not lie against a municipal corporation for damages caused by the negligence of its officers, agents, and servants in the performance of the public or governmental duties of such corporations. (*Winbigler* v. *City of Los Angeles*, 45 Cal. 37; *Howard* v. *San Francisco*, 51 Cal. 52; *Tranter* v. *City of Sacramento*, 61 Cal. 271; *Stedman* v. *San Francisco*, 63 Cal. 193; *Chope* v. *Eureka*, 78 Cal. 589, [21 Pac. 364, 12 Am. St. Rep. 113]; *Arnold* v. *San Jose*, 81 Cal. 618, [22 Pac. 877]; *Doeg* v. *Cook*, 126 Cal. 213, [58 Pac. 707, 77 Am. St. Rep. 171]; *Ukiah* v. *Ukiah etc. Co.*, 142 Cal. 182, [75 Pac. 773, 100 Am. St. Rep. 107]; *Sievers* v. *San Francisco*, 115 Cal. 654, [47 Pac. 687, 56 Am. St. Rep. 153].) The statement of the rule implies that there are other functions and powers of municipal corporations, for the negligent performance of which by their officers and servants, such corporations are liable. The distinction is clearly stated in the principal opinion. The authorities uniformly hold that the duties arising from the operation of gasworks, electric works, waterworks, and such like public utilities, are of the private nature which is required to make municipal corporations liable for damages caused by negligence therein. It is evident, however,

that the division of municipal functions into two classes, one public and governmental, the other private and corporate, is without any real foundation, and is made solely from the supposed necessity of doing so in order to allow a suit to be maintained for such injuries. In its public functions a municipality was said to represent the sovereign power, and as such to be exempt from private action. Hence, with respect to the class of powers here involved, it was considered necessary to designate them as private in character, in order to uphold a suit to recover for these injuries. The only reason given for classifying the power to administer public utilities as private and corporate, is that private persons and corporations frequently engage in such enterprises; that they are carried on by the city for its own profit; and, in a few cases, that the municipality has contracted with the sovereign power to do such things, and is therefore acting in a private capacity. None of these reasons is of any force. Private persons and corporations also frequently undertake to give police protection and fire protection to the inhabitants of cities. Yet these functions, in all cases where they are performed by a city, are always considered to be public and governmental, thus showing that the fact stated constitutes no reason for the distinction. It may be that in former times cities engaged in such enterprises for the sake of the profit to be made thereby. But, under our system, its charges for service are fixed solely for the purpose of covering the operating expenses and providing a sinking fund, and the profit, if any, is merely incidental. The making of contracts with the state by municipalities to supply such public needs is with us utterly unknown. In our form of government and under our constitutional provisions, a city can have no active powers or functions that are not public and governmental in character. (*Low* v. *Marysville*, 5 Cal. 214.) Its merely passive power to hold and possess property to which it has lawfully acquired title may not differ materially in its effects, with respect to the liability for a misuse of such property, from those of a private corporation or person to hold and possess such property, and after such property has for any reason become no longer necessary for municipal purposes, its continued ownership and possession may have no direct relation to the public

welfare or benefit.  But its active powers are all given for the purpose of enabling it the better to administer public affairs so as to subserve the public good and promote the general local public welfare, or, as the agency of the state, affairs of a more general concern, which are primarily committed to the state; and all such active powers, whether of one class or the other, are essentially of a public and governmental character.

It must be conceded that the rule holding cities liable for such injuries is more conducive to justice than would be the contrary.  "The rule of law is a general one, that the superior or employer must answer civilly for the negligence or want of skill of his agent or servant in the course or line of his employment, by which another, who is free from contributory fault, is injured.  Municipal corporations under the conditions herein stated, fall within the operation of this rule of law."  (2 Dillon on Municipal Corporations, sec. 968.)  Our Civil Code declares that "No one should suffer by the act of another" (section 3520), and "For every wrong there is a remedy" (section 3523).  The doctrine here applied is indeed the general rule applicable to all cases of tort, and the exemption of cities and other public corporations from liability for negligence in the exercise of some of its public and governmental functions is really in the nature of an exception to that rule.  It is against natural justice that it should be made possible by any system of jurisprudence that one should receive an injury at the hands of another who is subject to be sued in every ordinary form of action, and that that other should have immunity from any action for redress by the person injured.  Nor is the doctrine unjust or unfair to municipal corporations.  Private corporations engaged in enterprises of this character, as is well known, are liable for the neglect of their agents and servants in the line of their duties, and the expenses caused thereby form a part of the necessary operating expenses of the business, and their rates must be fixed with that item in view.  When municipal corporations engage in the same business, although they may do so solely for the general public benefit, and not for the profit to be derived therefrom, it is but fair and just that they should be subjected to the same burden.  This burden can easily be

shifted to the general public, who should bear it, by adjusting the rates charged for the service so as to cover this additional cost of operation.

The question how far, and in the exercise of what powers, a city should be held liable for such injuries is one of policy exclusively. The legislature has the power to dictate this policy. It has been settled at common law, upon various grounds (for it has not always been based upon this supposed distinction), that municipal corporations are liable for injuries caused in the exercise of certain powers, and are not liable for injuries arising from certain other powers, unless such liability is created by statute. Among the powers for which it is held liable in this manner are the power to carry on for the public use gasworks, electric works, waterworks, and other like public utilities, and this was a well-settled rule of the common law. (*Hill* v. *Boston*, 122 Mass. 344, [23 Am. Rep. 332]; 1 Dillon on Municipal Corporations, secs. 26, 27, 66, 67; 2 Dillon on Municipal Corporations, secs. 961, 966.) This common law has been carried into our jurisprudence and made the rule of decision in all the courts of this state by section 4468 of the Political Code. So far as the class of powers here involved is concerned, the rule is manifestly in accordance with justice, and is also in accordance with good public policy. It is not good policy that a person who receives an injury by the negligence of public servants engaged in carrying on such public utilities should be made to suffer the injury without recourse upon the public which receives the benefit of the services, and which, by reason of the proposed exemption of the public from such liability, would be enabled to obtain the service at less cost than if it were performed by private persons. This rule, having been established at common law, and being in existence at the time the statute was passed authorizing the creation of cities of the class to which Alameda belongs, must be considered in construing the statutory provision for the creation of such cities. It is provided by the statute (section 750 of the Municipal Corporation Act) that every municipal corporation of the fifth class "may sue and be sued in all courts and places, and in all proceedings whatever." (Deering's Gen. Laws 1897, p. 845.) I think this provision, in connection with section 4468 of the Political

Code, and the established common-law rule, should be construed as a statutory declaration that cities of this class are liable for the negligence of its agents and servants in all cases where such liability was established at common law, and this can be upheld as a statutory provision without the necessity of resorting for its support to a distinction which is wholly fictitious, and which will produce, as such arbitrary distinctions are apt to produce, embarrassing consequences, if recognized as real and applied to other questions.