[Civ. No. 3605. Second Appellate District, Division One.—July 7, 1921.]

JAMES R. SINCERNEY, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

[1] RAILROADS—USE OF STREET—AUTHORITY.—The right of a railroad corporation to use a street within an incorporated city cannot exist unless it is granted by a two-thirds vote of the town or city authorities from which the right must emanate.

[2] NEGLIGENCE—INJURY TO RAILROAD BRAKEMAN—COLLISION WITH POLE ERECTED BY MUNICIPALITY—PLEADING—TRESPASS.—In an action for personal injuries sustained by a railroad brakeman while climbing the side of a moving box-car by coming in contact with a pole erected by a city near the track and on the sidewalk of a street over the line of which the car projected, it was not necessary that the defendants should have alleged that plaintiff was a trespasser on the street, or that the railroad company was using the street without a franchise, as the defendants, under the denial of negligence and damage, as well as under their plea of contributory negligence, were entitled to prove any fact which, if established, would make good such defenses.

[3] ID.—INJURIES TO LICENSEE—LIABILITY.—Liability for negligence arises where one person causes an injury to another by his want of ordinary care or skill in the management of his property, except so far as the person injured has willfully or by want of ordinary care brought the injury upon himself, but a mere licensee cannot recover where the injuries are caused solely by reason of the unsafe condition of the premises and without any active or overt act of negligence committed against him by the occupant or owner of the premises.

[4] ID.—OPERATION WITHOUT FRANCHISE—EVIDENCE.—In an action for personal injuries to a railroad brakeman from coming in contact with a pole maintained by a municipal corporation, it was prejudicial error to refuse to admit evidence that the railroad was being operated without a franchise, for even if the company had ceased to be a trespasser by reason of long usage, it and its employees could not in any event have acquired any status better than that of a mere licensee with respect to such use of the street.

[5] MUNICIPAL CORPORATIONS — ADOPTION OF CHARTER—MUNICIPAL AFFAIRS — INDEPENDENCY OF GENERAL LAWS.—In view of sec-

3. Liability of land owner for injuries to licensees, notes, 23 Am. Rep. 183; 26 Am. Rep. 562; 42 Am. Rep. 315; 1 Ann. Cas. 209.

tions 6 and 8 of article XI of the constitution, which provide that cities by their charters may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, the city of Los Angeles in adopting its charter empowering it to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations contained in the charter, became independent of general laws upon municipal affairs, including laws giving the Railroad Commission powers over public utilities.

[6] ID.—EXERCISE OF PROPRIETARY FUNCTION—ELECTRIC POWER SYSTEM—LOCATION OF POLES—APPLICABILITY OF ORDER OF RAILROAD COMMISSION.—A city in acting in the capacity of a corporation owning and conducting the business of selling and distributing electric power exercises proprietary rather than governmental functions, and an order of the Railroad Commission establishing a minimum clearance for pole lines on each side of the center line of railroads is applicable to such a city.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles S. Burnell, City Attorney, W. B. Mathews, Lewis E. Whitehead, Trent G. Anderson and Ray C. Eberhard for Appellants.

Stuart M. Salisbury, Stannard A. McNeil and Philip C. Sterry for Respondent.

CONREY, P. J.—This is an action to recover damages for personal injuries sustained by the plaintiff when, in the course of his employment on August 31, 1918, as a brakeman on the Atchison, Topeka and Santa Fe Railway, he was climbing the side of a moving box-car which had been detached from the engine, and came in contact with a pole which appellant, board of public service commissioners, had erected near the railway track and on the sidewalk of Palmetto Street, in the city of Los Angeles. This pole was a part of a system of poles and wires for the transmission of electric power to the inhabitants of said city, for which service the city was receiving remuneration and deriving a profit from the sale of said electric power. The car on which the plaintiff was riding was traveling on a

spur-track built on a private right of way immediately north of and adjacent to Palmetto Street. Judgment was entered upon the verdict in favor of plaintiff in the sum of two thousand five hundred dollars, from which judgment defendants appeal.

The railroad track was so located that at the point opposite the pole the nearest rail was only 1.65 feet from the north line of the street. The width of the car (which was an ordinary box-car on the side of which respondent was climbing on a ladder at the instant of the accident) was such that the car projected more than a foot beyond the street line and over the sidewalk. This condition of the track, and similar use thereof by the railroad company, had existed for a long time. Accordingly the fact is established that the railroad company, and respondent as its employee, both before and at the time of this accident, were engaged in the business of using and occupying the street for the purpose of operating railroad trains thereon. Supplementary to the foregoing facts and for the purpose of establishing their contention that respondent at the time of the accident was a trespasser upon the street, appellants offered evidence, appropriate for the purpose, to prove that the railway company had no franchise to operate its cars on Palmetto Street at the point where the accident occurred. Objections to this evidence were sustained upon the ground that, as stated in the objections of counsel, evidence concerning the franchise was immaterial "in view of the law in this case that an obstruction shall not be placed within so many feet of a railroad track. It is immaterial where the franchise extends to." Appellants contend that the court erred in rejecting this evidence. The "law in this case," referred to in the objection, is General Order No. 26 of the Railroad Commission of the state of California, which establishes a minimum clearance for pole lines on each side of the center line of railroads. Appellants were charged with negligence in the erection and maintenance of the pole, in that the pole was located less than eight feet from the center line of the railroad track, and therefore was so placed in violation of law.

[1] The right of a railroad corporation to use a street within an incorporated city cannot exist unless it is granted by a two-thirds vote of the town or city authorities

from which the right must emanate.   (Civ. Code, sec. 470;
*San Pedro etc. Co.* v. *City of Long Beach,* 172 Cal. 631,
[158 Pac. 204].)   In *Pittsburgh etc. Co.* v. *Hood,* 94 Fed.
618, [36 C. C. A. 423], the circuit court of appeals said:
"In the absence of legislative authority, either direct or
through the authorized action of a municipality, the con-
struction and use by a railroad company of its road longi-
tudinally on a highway or street is a public nuisance, and
the company is subject to indictment for creating and
maintaining such a nuisance. . . . Such unauthorized occu-
pation and use of streets and highways, being wrongful,
not only creates a nuisance, but constitutes a railway com-
pany a trespasser, and renders it liable for such damages
as proximately result to persons or property in the absence
of contributory negligence."   In response to the proposition
last above stated, counsel for respondent say that the
right of way in question had been given to the railroad
company by the city of Los Angeles and had been used
by the railroad for over fifteen years; that the railroad
was not a trespasser in using this track; further that
this question is not raised by the pleadings but was raised
for the first time upon the trial of the case.   But they
do not refer us to any part of the record showing that
any right of way over Palmetto Street had ever been given
to the railroad by the city.   The error which appellants
complain of is that the court refused to permit appellants
to introduce evidence proving that no such right of way had
ever been granted.

[2]   It was not necessary that appellants in their answer
allege that respondent at the time and place of the accident
was a trespasser upon the street, or that the railroad com-
pany was using the street without a franchise.   Under the
denial of negligence on the part of the defendants, and
their denial that the plaintiff had suffered damage through
such alleged negligence, as well as under their plea that
the plaintiff's injuries were due to his own negligence, they
were entitled to prove any fact which, if established, would
make good these defenses.   [3]   Liability for negligence
arises where one person causes an injury to another by his
want of ordinary care or skill in the management of his
property, except so far as the person injured has willfully
or by want of ordinary care brought the injury upon

himself. (Civ. Code, sec. 1714). But the standard by which to test the "ordinary care or skill" required of a person in the management of his property is different, in the case of a trespasser or mere licensee upon the defendants' property, from the standard established in favor of a person lawfully present upon the premises where the injury is inflicted, and whose right to be there is not limited to that of a licensee. "A mere licensee cannot recover where the injuries are caused solely by reason of the unsafe condition of the premises and without any active or overt act of negligence committed against him by the occupant or owner of the premises." (*Herold* v. *P. H. Mathews Paint House,* 39 Cal. App. 489, 493, [179 Pac. 414].) Even if it were conceded that by reason of long use, without any objection from the city, the railroad company had ceased to be a trespasser in encroaching upon the street in the manner hereinabove stated without any franchise having been granted to it for that purpose, the company and its employees could not in any event have acquired any *status* better than that of a mere licensee with respect to such use of the street. So considered, any person using the street under that license must take the premises as he finds them. Under the evidence in this case no claim can be made that any active or overt act of negligence was committed by appellants against respondent at the time and place of the accident by which his injuries were received. The unsafe condition of the premises, if they were unsafe at all, was caused solely by reason of the presence of the pole in the place where it had been set up before the day when the accident occurred. This being so, appellants would not have been guilty of any negligence of which respondent had a right to complain. **[4]** Therefore we conclude that the court erred in refusing to admit the offered evidence. And if evidence to the effect that the train was being operated without a franchise had been received, appellants would have been entitled to have appropriate instructions given to the jury, stating the legal effect of such evidence if believed and found to be true.

**[5]** The distance of the pole as located and placed by appellants was less than eight feet from the center line of the spur-track. This was less than the minimum clearance for pole lines on each side of the center line of rail-

roads as established by General Order No. 26 of the Railroad Commission which is set out in the complaint. Respondent claims that the order is applicable to the location or maintenance of poles in the public streets of the city of Los Angeles, and that, therefore, the pole was erected and maintained at that place in violation of law, and that this was negligence, in that it was a violation of an obligation imposed by law, due from appellants to respondent at the time and place of the accident. Appellants contend that the order has no application to the location or maintenance of poles in the public streets of said city, and therefore that the court erred in giving to the jury the following instruction: "You are instructed that if the defendants, or either of them, placed a pole such as is alleged in the complaint at a point nearer than eight (8) feet from the center line of the railroad track described in the complaint herein, then I instruct you that the defendants are guilty of negligence, and if you find that such negligence was the proximate cause of the injury complained of your judgment shall be for the plaintiff unless you further find that the plaintiff's injuries were caused by his own contributory negligence." The city council of the city of Los Angeles is vested with power by ordinance to regulate the placing or maintaining of poles and the suspending of wires along or across any of its streets (Charter, art. III, sec. 31). The board of public service commissioners is vested with power to construct, operate, maintain, and extend electric plants, works, systems, and equipments, and other means for supplying the city and its inhabitants with electricity for light, power, heat and other purposes. (Charter, art. XVIII, sec. 192g.) Subdivision 51 of section 2 of article I of the charter empowers the city "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter . . . " This charter power is conferred within the terms of sections 6 and 8 of article XI of the state constitution, which provides that by their charters cities may "make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by gen-

eral laws.'' Referring to the adoption of said subdivision
51, the supreme court, in *Civic Center Assn.* v. *Railroad
Commission*, 175 Cal. 441, 448, [166 Pac. 351, 354], said:
''Thereupon, according to the terms of those sections of
the constitution, its ·powers over municipal affairs became
all-embracing, restricted and limited by the charter only,
and free from any interference by the state through gen-
eral laws, including laws giving the Railroad Commission
powers over public utilities. The result is that the city
has become independent of general laws upon municipal
affairs. Upon such affairs a general law is of no force
with respect to Los Angeles. If its charter gives it
powers concerning them, it has those powers; if its charter
is silent as to any such power, no general law can confer
it.''

In view of the law as above stated, if the location of
poles in a public street of said city is in all of its possible
relations a municipal affair, the conclusion must follow
that the general order in question of the Railroad Com-
mission had no force or effect with reference to the loca-
tion of the pole with which respondent came into contact
and thereby received the injuries of which he complains.
The use of the streets of a municipality for the maintenance
therein of telegraph and telephone poles and wires, although
a use secondary to the ordinary uses thereof by the gen-
eral public, is a municipal affair. (*Sunset Tel. & Tel.
Co.* v. *Pasadena*, 161 Cal. 265, 286, [118 Pac. 796].) But
while in general terms this is true, it is also true that these
and analogous uses of a street sometimes have interrela-
tions with things of general state interest which are not
municipal affairs. In recognition of this fact, it has been
held that the right and power of the Railroad Commission,
under section 43 of the Public Utilities Act [Stats. 1911
(Ex. Sess.), p. 40], to require state railroads to establish
viaducts or subways at street crossings in the city of Los
Angeles, is a right and power to make regulations which
are matters of general state concern, which are not prop-
erly municipal affairs. ''The right of the legislature, under
sections 17, 22, and 23, article XII, of the constitution, to
commit the regulation of these railroads, so far as they
operate within the cities, to the exclusive control of the
Railroad Commission, is not a matter which can be classed

as a municipal affair, but is a matter of general concern, and the legislative declarations on the subject are paramount to any city charter." (*Civic Center Assn.* v. *Railroad Commission,* 175 Cal. 441, 451, [166 Pac. 351, 355].)

The principle of decision based upon the constitution and charter provisions above mentioned is applicable to appellant city while acting in the capacity of a corporation owning and conducting the business of selling and distributing electric power. While the supplying of water by a city to its inhabitants is held to be a municipal purpose (*Marin Water etc. Co.* v. *Town of Sausalito,* 168 Cal. 587, 598, [143 Pac. 767]), and while the supplying of electric light and power by a city to its inhabitants is also a thing within the scope of municipal purposes where the right to conduct such business has been granted to the city, it is also well established that, in conducting business of this character, the city is exercising proprietary rather than governmental functions. It is upon this principle that cities are liable for negligence in the operation of such business. (*Davoust* v. *City of Alameda,* 149 Cal. 69, [9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760]; *Chafor* v. *City of Long Beach,* 174 Cal. 478, 487, [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670].) In *Davoust* v. *City of Alameda, supra,* the court (quoting *Western S. F. Society* v. *Philadelphia,* 31 Pa. St. 183) said in effect that where the power is given to a city to supply gaslight to its inhabitants, the city thereby exercises a special private franchise; that the investment made in such business is the private property of the city as much as are the lands and houses belonging to it; that the city stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred.

[6] We conclude, therefore, that General Order No. 26 applies to and controls the location by appellants of poles for use as a part of their power distributing system, to the same extent that it is applicable to a private corporation exercising similar rights under any franchise. That the subject matter of the order, whether the particular matter involved be within or without the city of Los Angeles, is of general interest and not merely of local or municipal concern is quite as clear as that the power to require state

railroads to establish viaducts or subways at street crossings in that city is a matter of general state concern. The act of setting a telephone pole in the street within eight feet from the center line of a railroad track was a violation of a valid order, having the force of law, governing that situation.

But the unqualified statement made in the court's instruction to the jury, that if the defendants placed the pole less than eight feet from the center line of the railroad track they were guilty of negligence, would not have been a correct statement as applied to the situation existing between the plaintiff and the defendants, if it had been a proved fact in the case that the railroad company, in whose business the plaintiff was employed, was occupying and using the street without any franchise giving it a right to such occupancy and use. "There cannot be neglect without the existence of a corresponding duty." (*Kennedy* v. *Chase,* 119 Cal. 637, [63 Am. St. Rep. 153, 52 Pac. 33].) It seems clear that the rejection of the evidence heretofore discussed, affecting plaintiff's rights in the street under the stated circumstances, was prejudicial error.

Judgment reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 1, 1921.

All the Justices concurred.