[Civ. No. 13454. Second Dist., Div. Three. Oct. 1, 1942.]

ELIZABETH SANDERS, Respondent, v. THE CITY OF LONG BEACH (a Municipal Corporation), Appellant.

George P. Kinkle and Clifford E. Hayes for Appellant.

Fred M. Riedman for Respondent.

SCHAUER, P. J.—Defendant City of Long Beach appeals from the judgment upon a verdict, entered against it and in favor of plaintiff.

The evidence shows that on May 27, 1940, defendant city was the owner and operator of a municipal auditorium, and had invited the general public to attend a "Know Your City Week" then being conducted by defendant in such auditorium. At about 8:00 p. m. of said day plaintiff was in the convention hall of the auditorium, where a performance presented by defendant had just been completed. It was then announced that there would be nothing further in the convention hall for about half an hour, but that *"there was some pictures being shown"* in another room, known as Convention Room No. 2, and anyone wishing to see them could attend. Convention Room No. 2 was reached by means of a lighted hallway leading to a doorway into the room. Inside the doorway the room maintained the same floor level for about eight feet and then dropped off by means of four stair steps down to a lower level upon which were placed the seats for spectators. Plaintiff proceeded to this room, where the showing of the motion pictures had *already started,* as was perhaps to be expected from the wording of the announcement as related by plaintiff in the language above quoted. She found the room unlighted except for the illumination reflected by the screen in the front part of the room and by the motion picture projector in the middle, saw no usher or other attendant, walked slowly into the room through a crowd standing around the door, and upon arriving at the four steps stumbled and fell to the floor. In so falling she struck her head upon one of the seats and received the injuries on account of which this action was brought. Plaintiff had not previously been in this room and did not know of the steps. On cross-examination she testified the room was so dark "you could not see your hand before your face." There were no stair lights, and it was stipulated that there was no warning sign telling of the stairs and no handrail to support or guide patrons, and also that "there was an ordinance for the rental of the auditorium at various schedules, various events."

At the conclusion of plaintiff's case defendant moved, first, for a nonsuit, and, when that motion was denied, for a directed verdict; this motion, also, was denied. The case then went to the jury, without the introduction of evidence by defendant. Defendant here contends that these motions should have been granted upon each or either of two grounds: (1) that plaintiff's evidence showed her to be guilty of contributory negligence as a matter of law, in that she proceeded into a "place

of impenetrable darkness,'' and (2) that there was no showing of notice of any defective or dangerous condition to any responsible officer of defendant city a sufficient length of time to enable it to have remedied the same, as required by the Public Liability Act of 1923 (Stats. 1923, p. 675; Deering's Gen. Laws, 1937, Act 5619, p. 2630). ■ A third ground—that there was no evidence of negligence on the part of defendant —was urged at the trial, in support of the motions for nonsuit and for a directed verdict, but defendant apparently concedes on this appeal that that question was properly for the jury if the defendant had notice as provided for in the Public Liability Act or if its activity was proprietary in character. In the latter case the liability of the city for the negligent conduct of its servants or the unsafe condition of its property would be the same as that of a private employer or owner. (*Peccolo* v. *City of Los Angeles*, (1937) 8 Cal. (2d) 532, 536 [66 P. (2d) 651]; *General Petroleum Corp.* v. *Los Angeles*, (1937) 22 Cal. App. (2d) 332, 338 [70 P. (2d) 998].)

■ In support of its first ground—that plaintiff was guilty of contributory negligence as a matter of law—defendant relies chiefly upon the case of *Bruce* v. *Risley*, (1936) 15 Cal. App. (2d) 659 [59 P. (2d) 847], wherein at the conclusion of plaintiff's case the court ruled that plaintiff was guilty of contributory negligence as a matter of law and directed a verdict in favor of defendant. It there appeared that plaintiff as a prospective tenant was inspecting a storeroom owned by defendant. At the rear of the room was a door opening on a platform leading to a flight of stairs to the basement. Believing there was another room on the other side plaintiff opened the door, lighted a match which enabled him to see that the floor beyond the doorway for a distance of about six inches resembled the floor of the storeroom, and when the match went out lighted another which enabled him to see not farther than ten inches beyond him, advanced through the doorway, and through an opening at the side of the stairway fell eight feet to the basement floor below. The appellate court, in upholding the trial court's ruling, stated (at page 663) : ''It is the established rule in this state that the ruling of a trial court as to whether or not a given state of facts presented to it establishes negligence as a matter of law will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. [Citations.],'' and then concluded that plaintiff had fully appreciated the warning of the darkness and in proceeding

without sufficient illumination had been guilty of negligence contributing to the accident. The ruling on the facts in that case cannot be applied, however, where, as here, plaintiff walks along a course she had been specifically invited by defendant to follow and enters a room which was, and which she had reason to anticipate would be, darkened as an incident to the very purpose for which she had been invited to enter it —the showing of a motion picture. Even assuming that the darkness could be defined as "impenetrable," that fact may well have tended to reassure plaintiff of the safe condition of a room being used as a theater and which she was invited to enter rather than to warn her of unseen danger if she carried out in full her acceptance of defendant's invitation and walked into the room in search of a seat.

 Defendant owed to plaintiff, an invitee, the duty of exercising ordinary care for her safety (see *Dingman* v. *A. F. Mattock Company*, (1940) 15 Cal. (2d) 622, 624 [104 P. (2d) 26] ; *McStay* v. *Citizens Nat. T. & S. Bank*, (1935) 5 Cal. App. (2d) 595, 599 [43 P. (2d) 560] ; *Koppelman* v. *Ambassador Hotel Co.*, (1939) 35 Cal. App. (2d) 537, 540 [96 P. (2d) 196] ; *Emery* v. *Pacific T. & T. Co.*, (1941) 43 Cal. App. (2d) 402, 406-407 [110 P. (2d) 1079] ; *Matherne* v. *Los Feliz Theater*, (1942) 53 Cal. App. (2d) 660, 666 [128 P. (2d) 59] ; *Pease* v. *San Diego U. Sch. Dist.*, (1942) 54 Cal. App. (2d) 20, 23 [128 P. (2d) 62]) and plaintiff was entitled to assume that she would not be exposed to a danger that would come to her only through a violation of defendant's duty to her (*Hechler* v. *McDonnell*, (1941) 42 Cal. App. (2d) 515, 517 [109 P. (2d) 426] ; *Beck* v. *Sirota*, (1941) 42 Cal. App. (2d) 551, 557 [109 P. (2d) 419] ; *Hanson* v. *Cordoza*, (1930) 106 Cal. App. 500, 505 [290 Pac. 62] ; *Gornstein* v. *Priver*, (1923) 64 Cal. App. 249, 259 [221 Pac. 396] ; and see *Sommerfield* v. *Miratti*, (1942) 49 Cal. App. (2d) 450, 454 [121 P. (2d) 746] ). The absence of stronger illumination and of an attendant may have suggested to plaintiff that no dangers were present which would reasonably require disclosure, and have led her to believe that she was safe in proceeding into the room. Viewing the evidence in the light most favorable to plaintiff, as required when considering a motion for a nonsuit (*Archer* v. *City of Los Angeles*, (1941) 19 Cal. (2d) 19, 23 [119 P. (2d) 1] ; *Robinson* v. *George*, (1940) 16 Cal. (2d) 238, 241 [105 P. (2d) 914] ; see *McStay* v. *Citizens Nat. T. & S. Bank, supra*, (1935) 5 Cal. App. (2d) 595, 600) or for a

directed verdict (*Estate of Flood,* (1933) 217 Cal. 763, 768 [21 P. (2d) 579]; *Estate of Lances,* (1932) 216 Cal. 397, 400-401 [14 P. (2d) 768]; *Collins* v. *Nelson,* (1936) 16 Cal. App. (2d) 535, 537 [61 P. (2d) 479]) we conclude that no abuse of discretion appears in the trial court's ruling that the question of plaintiff's contributory negligence was for the jury (see *Bruce* v. *Risley, supra,* (1936) 15 Cal. App. (2d) 659, 663).

Defendant refers us also to the cases of *Powers* v. *Raymond,* (1925) 197 Cal. 126 [239 Pac. 1069]; *Hilsenbeck* v. *Guhring,* (1892) 131 N. Y. 674 [30 N. E. 580]; and *Rohrbacher* v. *Gillig,* (1911) 203 N. Y. 413 [96 N. E. 733] (all three of which are cited on page 664 of the opinion in *Bruce* v. *Risley, supra*); and to the case of *Medcraft* v. *Merchants Exchange,* (1931) 211 Cal. 404 [295 Pac. 822]. In each of those cases the plaintiff was held to be guilty of contributory negligence but in none of them do the facts correspond with those in the case now before us. In *Powers* v. *Raymond, supra,* plaintiff, a hotel employee, was injured as the result of a fall while walking late at night along a dark and unlighted by-path on the hotel grounds instead of using the main well-lighted roadway provided by the hotel; she was held to be a mere licensee as to the path she took, and a verdict was directed in favor of defendants. In *Hilsenbeck* v. *Guhring, supra,* plaintiff opened the wrong door off of an apartment house hall, found only darkness confronting him, and upon proceeding without securing a light fell down a flight of stairs instead of entering the room he had sought. In *Rohrbacher* v. *Gillig, supra,* plaintiff ignored a broad well-lighted and plainly apparent stairway provided as the means of reaching the upper floors of a building, walked down a dark hall in search of another stairway, saw a door half open, stepped through it, and fell down an elevator shaft. In *Medcraft* v. *Merchants Exchange, supra,* plaintiff, seeking a washroom, ignored a lighted room which was the one he sought, opened another door, stepped through it into darkness, and dropped down an air shaft; in granting a nonsuit the court held plaintiff to have been a mere licensee when he undertook to enter the darkened space. In those cases, which we may designate as wrong-area or wrong-room cases, we find nothing impelling us to change our view that plaintiff cannot be said to be guilty of contributory negligence as a matter of law where, in acceptance of an express invitation she pursues the designated path and proceeds into the very room

which she was invited to enter and which she could expect to find in substantially the darkened condition in which she actually found it. Consistent with this conclusion are the cases of *Brinkworth* v. *Sam Seelig Co.*, (1921) 51 Cal. App. 668 [197 Pac. 427] ; *Roach* v. *Wells Fargo Bk. & Union Trust Co.*, (1929) 102 Cal. App. 380 [282 Pac. 967] ; *Hodge* v. *Weinstock, Lubin & Co.*, (1930) 109 Cal. App. 393 [293 Pac. 80] ; *Walsh* v. *Maurice Mercantile Co.*, (1937) 20 Cal. App. (2d) 45 [66 P. (2d) 181] ; and *Thompson* v. *B. F. Goodrich Co.*, (1941) 48 Cal. App. (2d) 723 [120 P. (2d) 693]. In each of those cases it was held that the question of contributory negligence was for the jury where the plaintiff invitee tripped and fell over an unexpected but plainly visible obstruction on the floor of fully lighted premises to which the invitation extended, but which obstruction the plaintiff had failed to see. If with the ability to do so, plaintiff simply fails to look down and see an obstruction and is not contributively negligent as a matter of law, then it appears to us that the situation is even more strongly in favor of plaintiff in the instant case, where no means was provided by which she could have seen the unexpected danger, if she entered while a picture was being projected, and where, in the ordinary course of events, it must or should have been contemplated that invitees would so enter.

In answer to the second of defendant's grounds of its motions for nonsuit and for a directed verdict, plaintiff relies upon the cases of *Boothby* v. *Town of Yreka City*, (1931) 117 Cal. App. 643 [4 P. (2d) 589], and *Chafor* v. *City of Long Beach*, (1917) 174 Cal. 478 [163 Pac. 670, Ann. Cas. 1918D, 106, L. R. A. 1917E, 685], as establishing that defendant in operating the auditorium here involved was acting in a proprietary rather than in a governmental capacity and was therefore liable for damages resulting from the negligence of its officers, agents, and employees, independently of the Public Liability Act (see *Davoust* v. *City of Alameda*, (1906) 149 Cal. 69, 70 [84 Pac. 760, 9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536] ; *Kellar* v. *City of Los Angeles*, (1919) 179 Cal. 605, 607 [178 Pac. 505]). We conclude that the Chafor case, wherein the law pertaining to this question was thoroughly and clearly discussed and explained, does settle conclusively that defendant's auditorium here was being maintained and operated by it in a proprietary capacity. Therefore, since the evidence is prima facie sufficient to establish negligence on private proprietary standards, the question of notice to a responsible

officer of defendant city, such as would be required to meet the conditions of the Public Liability Act, becomes immaterial. Defendant argues that the fact that in both the Boothby and the Chafor cases the premises on which the respective injuries occurred were leased out by the defendant cities at the times of the accidents distinguishes those cases from the one at bar, inasmuch as defendant city here was not renting out the auditorium on the occasion of the Know Your City Week. The opinion in the Chafor case itself refutes this argument. It is there stated (at page 483) : " . . . it is important to note that the true test does not rest upon the determination as to whether or not the municipality is reaping a monetary gain. . . . In other words, the act does not become governmental merely by virtue of the fact that the city from the performance of it reaps no direct pecuniary return. . . ."

"[Page 491] The conclusion already expressed concerning the general purpose of the construction of this auditorium, and the specific purpose of its use upon the day in question, does not at all depend upon the evidence which was introduced to the effect that the city did not charge any rental upon the day in question, and that it did rent portions of the auditorium for purposes of private gain. The fact that no rental was charged upon this particular day is in no wise determinative of the question. . . ."

The evidence here does not disclose the exact purpose for which defendant city was conducting the Know Your City Week, although there was testimony to the effect that "each department had charge of its own exhibits," and that the pictures on the occasion here involved "were to have been lifeguard pictures taken by one of the local lifeguards and were to have been followed by a park picture put on by the superintendent of municipal parks." Apparently, therefore, the object was to advertise the city generally and give instruction to residents and visitors of defendant city concerning the various departments of the municipality. The Chafor case further establishes that such use of the building is not governmental. The true basis of distinction between governmental and proprietary activities is set forth at page 487 of the opinion (in 174 Cal. 478) in the following words: " . . . the governmental powers of a city are those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, the caring for the poor, and the education of the young; and in the performance of these

functions all buildings and instrumentalities connected therewith come under the application of the principle. [Citation.]

"But it is of course true that modern cities and towns enter upon many forms of activity, operate utilities for the benefit of the inhabitants, and provide many means for the easing or improving of the condition of the people that were never dreamed of at common law. Nevertheless the uniform holding as to all such activities on principles manifestly just to the people themselves is that no matter how beneficial they may be in a general sense to the inhabitants of the municipality, unless they are governmental in their essence, the municipality's conduct in managing them is controlled by the same rules of liability that apply to an individual. Thus, while schoolhouses, city halls, jails, firehouses, are with much uniformity held to be instrumentalities for governmental purposes, no such rule applies to other buildings constructed by a municipality, though for the benefit, convenience, or advantage of its people. . . .

"[Page 489] . . . True, it [the auditorium] was maintained for the benefit of the municipality in the sense that it afforded the populace a meeting place for many forms of amusement and instruction. But in all these respects it differed no whit from any other auditorium or assembly hall built and maintained by private capital for the same purposes. The city had full charge of it, could let it out, or refuse to let it out at its pleasure. . . . That in any individual instance the city allowed it to be used without a rental charge, no more affected the governing principle than it would be affected if a private proprietor did the same thing." The principle involved is that quoted in both the Chafor case and the case of *Davoust* v. *City of Alameda, supra,* from Dillon on Municipal Corporations. The quotation, as stated on page 72 of 149 California Reports (*Davoust* v. *City of Alameda*) is: "In its governmental or public character, the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself; . . . but in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual."

That the defendant city was conducting the Know Your City Week to advertise itself and give instruction concerning its various activities and the operation of its several departments did not make the function of the building during that week a governmental one. It is established in this state that a city is engaging in a proprietary activity in operating its own hospital . (*Bloom* v. *San Francisco,* (1884) 64 Cal. 503, 504 [3 Pac. 129]) ; its own electric-light plant (*Davoust* v. *City of Alameda, supra,* (1906) 149 Cal. 69, 72; *Sincerney* v. *City of Los Angeles,* (1921) 53 Cal. App. 440, 447 [200 Pac. 380]) ; its own water system (*South Pasadena* v. *Pasadena Land etc. Co.,* (1908) 152 Cal. 579, 593 [93 Pac. 490] ; see *Ritterbusch* v. *City of Pittsburg,* (1928) 205 Cal. 84 [269 Pac. 930, 61 A. L. R. 448]) ; its own garage for the repair of its own cars, *even though such cars be used in the carrying out of its governmental functions* (*Bertiz* v. *City of Los Angeles,* (1925) 74 Cal. App. 792, 796 [241 Pac. 921]) ; or its own airport (*Coleman* v. *City of Oakland,* (1930) 110 Cal. App. 715, 719 [295 Pac. 59]). ▉ That the city derives revenue from the carrying on of any of these activities is not the essential factor which makes such activities proprietary in nature (*Chafor* v. *City of Long Beach, supra,* (1917) 174 Cal. 478, 483, 491; *Kellar* v. *City of Los Angeles, supra,* (1919) 179 Cal. 605, 610; *Crone* v. *City of El Cajon,* (1933) 133 Cal. App. 624, 629 [24 P. (2d) 846]). Rather, it is that they do not fall within those functions which are essentially governmental in character.

Defendant has referred us to the cases of *Meyer* v. *San Francisco,* (1935) 9 Cal. App. (2d) 361 [49 P. (2d) 893], and *Crone* v. *City of El Cajon, supra.* Those cases, however, do not cause us to change our opinion that the jury was legally justified in finding and the trial court in holding, that defendant city here was acting in a proprietary capacity in operating the building involved. Both cases, so far as pertains to matters here involved, are based upon the earlier case of *Kellar* v. *City of Los Angeles, supra,* which is not contra to, but which relies upon doctrine declared in, the Chafor case. In the Kellar case, plaintiff's injuries were suffered at a summer camp operated by defendant city, and our Supreme Court in holding the operation of the camp to be a governmental function likened the enterprise to public parks and stated (at page 609 of 179 Cal. 605) : ''Like the public parks, they [such camps] are referable solely to the duty of maintaining the public health, and have nothing of the nature

of an ordinary business enterprise.'' The injuries involved in the Meyer case and in the Crone case occurred while the respective plaintiffs were enjoying the facilities of public parks, apparently found to have been maintained by the defendant municipalities for the benefit of the public health. Maintenance of public health is a governmental function but operation of a public auditorium, including its use to advertise the owner-city, is a proprietary activity.

The judgment is affirmed.

Shinn, J., and Wood (Parker), J., concurred.