[Civ. No. 13297. First Dist., Div. Two. May 20, 1947.]

WILLIAM BEARD, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Marshall Rutherford and Healy & Walcom for Appellant.

John J. O'Toole, City Attorney, Thomas C. Ryan and Bernard J. Ward, Jr., Deputy City Attorneys, for Respondents.

NOURSE, P. J.—Plaintiff sued for damages on a complaint alleging that he had placed his fifteen months old son in the city and county hospital for hospitalization and medical care as a paying patient, that the hospital was operated by the city and county of San Francisco in its proprietary capacity, that, because of defendants' negligent lack of supervision, the child fell from its crib causing his death. A general demurrer to the complaint was sustained without leave to amend.

The appeal presents the single issue whether the operation of the hospital under the charter of the consolidated city and county is a governmental or a proprietary function. The parties concede that, under the rule of *Calkins* v. *Newton,* 36 Cal.App.2d 262 [97 P.2d 523], and *Griffin* v. *County of Colusa,* 44 Cal.Ap.2d 915 [113 P.2d 270], a county is not liable for injuries arising from the operation of a county hospital. It is also conceded by respondents that the activities of a city, while operating in a purely proprietary capacity, are actionable. Incident to the issue is the inquiry whether a consolidated city and county operating under a municipal charter stemming from article XI of the Constitution acquires the role of a municipality, or of a county, or of both. Then the question arises whether the operation of the hospital under the charter does not become a municipal as well as a county affair and, if this is so, whether these dual functions do not make the facility a proprietary one as to paying patients.

The consolidation of the city and county of San Francisco is authorized by section 7 of article XI of the Constitution reading: "City and county governments may be merged and consolidated into one municipal government, with one set of officers. . . ." Note that the governmental product thus created becomes "one municipal government." Under section 8 of the same article a consolidated city and county may frame a charter "for its own government." By section 8½ a charter framed under the previous section is permitted to provide for the manner of election or appointment, and the terms of office, of the "several county and municipal officers

and employees.'' Though this section does not designate the manner in which the duties of the several county and municipal officers shall be prescribed, section 6 of the same article does authorize a municipal charter to provide for the performance by county officers of certain municipal functions under certain circumstances. And the same section declares that such municipal charters shall prevail over general laws ''in respect to municipal affairs.'' Viewed in its political relations the governmental structure becomes both a county and a municipal corporation and the functions performed by its officers in each instance determine whether it is to be viewed as a city or a county. *San Francisco* v. *Collins,* 216 Cal. 187, 191 [13 P.2d 912].

 Assuming that the city and county, acting under the city's power to make ''local, police, sanitary'' regulations (art. XI, § 11) established and maintains the city and county hospital, the functions thus performed would be municipal affairs subject to the control of the municipal charter. *Jardine* v. *City of Pasadena,* 199 Cal. 64, 68 [248 P. 225, 48 A.L.R. 509]. Though the provisions of the charter are not pleaded nor referred to, the allegation in the complaint that the boy was received as a paying patient is a sufficient statement that the hospital was not operated for indigent patients alone under the general state law. The power to make local, police and sanitary regulations may be evidenced by the construction and operation of parks, playgrounds, public utilities, and other facilities in aid of the health and welfare of the community. These facilities may be operated for profit—some in competition with private institutions of the same character. They are then said to be ''proprietary.''

The record does not disclose the manner in which the San Francisco city and county hospital was organized or how it is financed or operated. And on this appeal we cannot consider ordinances or local regulations. But the complaint alleges that the ''municipal corporation'' operates the hospital ''in a proprietary capacity.'' The appellant argues that this is sufficient to carry the pleading beyond the general demurrer. Respondents argue that it is a mere conclusion of law. Ordinarily this would be true. But here, because of the unusual status of the two governmental agencies, the manner of operation of the hospital becomes a mixed question of law and fact. There is no controversy over this—the operation of a city hospital is a municipal affair finding direct authority

in the Constitution. When a chartered city accepts the grant of power and establishes a hospital for the health and public welfare of the community it has two courses to follow—it may maintain a hospital for the indigent alone, or it may maintain one in competition with private hospitals in the same community, charging fees for both medical care and hospitalization. If the latter course is followed patients need not be restricted to the indigent members of the community but they could be accepted without regard to legal residence and would be charged fees in competition with the private hospitals. If this course is followed a city would be operating the hospital in a proprietary capacity as to paying patients just as it operates its street railways, water, gas and electric facilities, and other utilities for the benefit of the community at large. Hence the allegation in the complaint that the "municipal corporation" was operating the hospital "in a proprietary capacity" and that plaintiff's son was admitted "as a paying patient" is sufficient, against a general demurrer, to raise the issue that, notwithstanding the dual capacity of the consolidated city and county government, this particular hospital was operated as a municipal affair incident to the municipal status of the city and county.

The case is thus distinguished from *Calkins* v. *Newton,* 36 Cal.App.2d 262 [97 P.2d 523], and *Griffin* v. *County of Colusa,* 44 Cal.App.2d 915 [113 P.2d 270], both of which involved county hospitals operated under the state statutes which were held to be delegations to the various counties of the governmental duty of the state as a whole to care for the indigent sick. It is more akin to those cases where a city assumes, either through its charter or under general laws, to operate a public utility for the benefit of the health and public welfare of the community.

This relation was recognized by the Supreme Court in the early case of *Bloom* v. *San Francisco,* 64 Cal. 503 [3 P. 129], where the court said (p. 504) : "We think the city and county of San Francisco had such proprietorship of the city and county hospital as rendered it liable for damages. . . ." It is true that this was a case involving a nuisance arising out of the operation of the hospital and for that reason respondents contend that it is not applicable. We have here an action in tort for negligence in the operation of the hospital. The nuisance in the Bloom case also arose from negligent operation. But the Bloom case was not decided on the ground

of governmental nuisance. It was expressly based on the city's "proprietorship." The case was cited with approval in *Chafor* v. *Long Beach,* 174 Cal. 478, 487 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685]; and *Sanders* v. *City of Long Beach,* 54 Cal.App.2d 651, 660 [129 P.2d 511].

The latter case involved the operation of a municipal auditorium. The opinion listed as similar municipal activities a city owned electric plant, *Davoust* v. *City of Alameda,* 149 Cal. 69, 72 [84 P. 760, 9 Ann.Cas. 847, 5 L.R.A.N.S. 536]; a municipal water system, *South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 593 [93 P. 490]; a municipal garage, *Bertiz* v. *City of Los Angeles,* 74 Cal.App. 792, 796 [241 P. 921], and a municipal air port, *Coleman* v. *City of Oakland,* 110 Cal.App. 715, 719 [295 P. 59].

The Sanders case states that receipt of revenue from the activities is not the essential factor which makes them proprietary. The determining factor is whether the activities "are essentially governmental in character." If we must accept as settled law the ruling in *Calkins* v. *Newton* (*supra*) and *Griffin* v. *County of Colusa* (*supra*) that, in the operation of a county hospital, the county is acting merely as an agent of the state under a delegation of the state's governmental duty to care for the indigent the rule does not apply to a municipal corporation which on its own choice and initiative has elected to maintain and operate a hospital for paying patients. These questions are factual and cannot be disposed of on demurrer. Cases may arise in the operation of the city hospital in which no liability would attach. But on the other hand, proof of the proprietary character of the particular functions would fix the liability.

The allegations of the complaint, though not as comprehensive as they might have been, present a case closely akin to those cases involving the question of the liability in tort of a charitable hospital receiving paying patients. A county or municipal hospital maintained solely for the care of the indigent members of the community and without charge would seem to enjoy the same status, so far as that liability is concerned, as a strictly charitable hospital. The rule of non-liability of such institutions to paying patients has been effectively rejected in this state in *Silva* v. *Providence Hospital of Oakland,* 14 Cal.2d 762, 776 [97 P.2d 798], where cases from other jurisdictions are cited.

The complaint is sufficient to tender the issue that the consolidated city and county of San Francisco has elected to operate the San Francisco hospital "in a proprietary capacity" and we must hold that it states a cause of action requiring an answer.

Judgment reversed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied June 19, 1947, and respondents' petition for a hearing by the Supreme Court was denied July 17, 1947.