[Civ. No. 4520. Third Appellate District.—March 19, 1932.]

RICHARD SCHMIDT, a Minor, etc., Appellant, v. CITY OF VALLEJO (a Municipal Corporation), Respondent.

L. L. Steele and James F. Brennan for Appellant.

Russell F. O'Hara for Respondent.

PRESTON, P. J.—This is an action for damages brought by plaintiff, a minor of the age of nine years, through his guardian *ad litem*, against the defendant municipality, under subdivision 2 of the Statutes of 1923, page 675, for certain personal injuries received by plaintiff as the result of a fall from an alleged dangerous and defective slide maintained in the public playgrounds of the defendant, City of Vallejo.

The case having been called for trial, a jury was impaneled and evidence adduced. At the conclusion of plaintiff's case defendant moved for a nonsuit, which motion was granted and judgment of nonsuit entered.

Plaintiff prosecutes this appeal from said judgment.

The statute mentioned is found in the Statutes of 1923, page 675, and subdivision 2 thereof reads as follows:

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases

where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed and neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

Specific attention may be called to the opening portion of the law, as follows:

''Counties . . . shall be liable for *injuries* to persons and property *resulting from* the dangerous or defective condition of public streets . . . property in all cases,'' etc.

Cases arising under the statute quoted have been before the courts many times and it is needless to review the authorities. A mere citation to such authorities will suffice: *Hook* v. *City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643]; *Huff* v. *Compton Grammar School,* 92 Cal. App. 44 [267 Pac. 918]; *Dawson* v. *Tulare High School,* 98 Cal. App. 138 [276 Pac. 424]; *Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083]. We adhere to the conclusions reached, both by this court and in other courts in this jurisdiction.

 From the decisions and from the wording of the statute we are of the opinion that in order to recover damages a plaintiff must prove at the outset that he has been *injured as a result of the dangerous or defective condition of public streets, buildings, grounds, works or property.*

In the instant case appellant prefaces his argument in the following terms:

''Under the statute it is only necessary for plaintiff to prove four things, which are:

''1. The dangerous and defective condition of the property;

''2. Knowledge of some officer or agent of the defendant of the dangerous or defective condition;

''3. Neglect to repair within a reasonable time after notice or knowledge;

''4. Authority of the officer or agent to repair.''

If we should accept appellant's views in this regard we would have no alternative but to reverse the judgment.

There was sufficient evidence to have rendered erroneous a nonsuit on each of the elements so claimed to be the entire foundation of the present cause of action. But it can be at once seen that appellant has entirely ignored the one most important element in his cause of action, namely, the injury. The injury in the present action is alleged to have resulted from the dangerous and defective condition of a certain playground structure commonly designated as a slide. Such a contrivance is in general public use throughout the playgrounds of the state, and any detailed mechanical blue-print thereof would be unnecessary. It may be generally described, however, with particular reference to the slide here in question.

Two upright posts or poles are set in the ground and are of a height approximately thirteen feet. From the top a ladder runs to the ground on one side and a semi-curving slide runs to the ground from the other side. This slide has a smooth surface and starts at a pitch of forty-five degrees, curving up as the bottom is approached, so that the last few feet of the slide almost parallel the ground.

To use the slide, one goes up the ladder to the top point where the slide and ladder apex. Here there is a guard-railing extending above the structure about two feet, forming an arch effect. The railing runs as a support for a person about to be seated upon the slide and enables the person to acquire a balance insuring a straight and even course down. This rail or guard drops down over the slide to a distance of three feet or thereabouts and at the end the rail is turned to fasten to the slide at that point. By way of further description this guard or rail is so arranged that one seated on the slide, preparatory to going down, may, while still seated, secure a hold upon the rail. About a foot and one-half from the top of the slide there is an upright brace running from the slide to this rail, the general and designed purpose of which is to brace and strengthen the rail and render the same less mobile.

At the point where the slide and ladder join is a metal apron covering and concealing the jointure and presenting an unbroken surface at the apex.

It is conceded that the slide was located in a public playground maintained by the defendant city and under the care and supervision of its officers. And at this point it may be conceded that there is in the record before us ample evidence to the effect that in some particulars this slide was in a defective and perhaps dangerous condition. For instance, the apron over the apex ridge was loose and could be flapped about—the side boards on the slide were rough; the frame was so secured that it was possible for two or three boys to cause the slide to vibrate and sway. Also, at the outlet or end from the slide there is a concrete landing. There is also evidence to indicate that the slide had been the scene of other accidents and that complaint had been made to the proper officers of the city and no action taken.

█ On the day in question here, plaintiff, a boy of nine years of age, went to the playground in the company of other young people, all older than himself. Plaintiff alone undertook the slide. He walked up the ladder, crossed the apron and seated himself at the top of the slide. He did not, however, at once commence the descent. He remained seated there with his legs outstretched and resting his feet against the braces supporting the rail. While so seated, one of his companions inquired the time of day and plaintiff reached down into his clothing for his watch. In some manner one of his feet got caught between the brace and the outer wall of the slide. He thereupon, in an effort to free himself, straightened up his body and pulled himself backward and upward. The release of the foot caused a sudden impetus to be given the body and the boy fell backwards over the top and down to the ground, causing him to be seriously injured.

Upon the motion for a nonsuit the trial judge's conclusion was expressed as follows: "His fall was caused because he was a little fellow and not strong enough to get just into the right position, or because he was careless or for some reason he fell; *but it was not caused by a defect in the construction of the slide.*" We may stop here, in passing, to note appellant's contention that the reasons given by the court below were reasons other than assigned in the motion for a nonsuit. █ There is no merit in this contention. The primary ground of defendant's motion was that if there was any defect in the slide there was no evi-

dence that the injury resulted therefrom. Therefore, the court's holding was in direct response to the motion.

The boy was in a position of unquestioned safety. Certain minor defects which may have been in the slide in no way entered into the accident. There is some evidence to the point that the structure was so erected that the rail and support provided a place where a boy might place his feet and that the feet so placed might get fastened, as did the feet of plaintiff. This argument is purely speculative. There is no evidence of any knowledge on the part of any of the defendant officers or employees that this part of the slide was so used. There is no evidence that the rail and its support were provided for such a purpose, or for any other purpose than to aid in the proper and safe use of the apparatus. The structure was of standard pattern and in general use; an approved appliance for outdoor recreation and diversion.

There is no instrumentality, however safely constructed, but that it may be converted in its use into an instrumentality of danger. It is a generally well-known commonplace that children in early years display an aptitude in jumping from places of varying height, and it seems readily apparent that if one child in play should mount the ladder of this slide and deliberately jump from a high round or step thereof, the resulting injury, if any, would hardly be chargeable to the fact that there was some slight defect elsewhere in the slide.

There was testimony to the effect that more modern slides have changed the style of construction, in so far as this guard-rail is concerned. The change has resulted in the rail being shortened or looped into a circular affair of much less proportion. The evidence concerning this change shows that it was made not to protect against a demonstrated danger, but for the purpose of preventing two or three boys loitering at the top or to prevent one larger boy from hogging the appliance.

Mindful, as we must be, of all of the rules regulating and defining the trial court's right and duty on motions for nonsuit, we can find no evidence in the record that would support a judgment for plaintiff had the case gone to the jury.

It is true that any structure raised thirteen feet from the ground and provided for children to play upon has certain elements of hazard. But the general experience of edu-

cators and playground directors has shown these slides to be rarely the source of accident of serious nature. They cannot be classed as dangerous instrumentalities.

All that the plaintiff required for his safety was a proper use of the slide. Unfortunately, and, perhaps, as a boy will often do, he wanted to slide in his own way. The fact that the brace could be used as a foot-rest, while preparing for the slide, did not make the construction defective or dangerous. The function of the brace was solely to support the rail, which furnished a support and guide for the younger people in getting seated.

There is not a syllable of evidence to the effect that in this respect the slide was either defective or dangerous as a matter of construction. In fact, it is obvious that the slide would be greatly more dangerous with no support.

Appellant stresses the point that there is evidence to the point that in some other cities slides have been constructed in a bed of sawdust or shavings, so that a fall from any part of the structure would be less likely to result in serious injury.

This is but an additional factor of safety and raises no inference that slides without this safeguard are dangerous or defective.

If we hold, as the record compels, that the slide itself is not a dangerous appliance, it must follow that any failure to guard against all possible danger does not create the liability claimed.

Under the law governing, it is not for a court or jury to speculate as to possibilities of insuring absolute safety. The law fastens upon a municipality the duty of maintaining its property in a condition neither dangerous nor defective. When it does so maintain its property, liability is not to be fastened upon it merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1932.