[Civ. No. 14309. First Dist., Div. One. Nov. 9, 1950.]

VIRGINIA R. RHODES, Respondent, v. CITY OF PALO ALTO, Appellant.

Arnold Rumwell, City Attorney, for Appellant.

John G. Sobieski for Respondent.

WOOD (Fred B.), J.—Defendant appeals from a judgment awarding plaintiff damages for personal injuries sustained at a parking lot owned and operated by defendant.

About 8 p. m. on the evening of December 3, 1946, respondent went to the Community Center in Palo Alto to attend the reading of a play in the Community Theater. She parked her car in a parking lot at the Community Center and while walking toward the theater stepped into a chuckhole and suffered the injuries of which she complains. There was a pole on which there were lights used to illuminate the parking area, but the lights were not turned on.

The Community Center is situate in a public park and includes, in addition to the Community Theater, a junior museum, swimming pools, a soft-ball park, junior playground, tennis courts, scout headquarters, administration offices of the city recreation department, a power generating plant, a

firehouse, a grammer school, and a parking lot, all owned by appellant. The park, the recreation facilities, the parking lot, and the Community Theater are operated by appellant through its recreation department. Persons using any of these facilities may use the parking lot.

Concerning the use of the theater and the parking lot in connection with it, the complaint alleged and the answer admitted that "the defendant owned, maintained, and operated, at the so called Community Center, adjoining Middlefield Road, in the City of Palo Alto, a Municipal Auditorium and a parking lot adjacent thereto for the use of persons attending the meetings in said Municipal Auditorium; that the defendant invited the public to attend the meetings held in the Municipal Auditorium and invited the persons attending such meetings to use said parking lot for parking their automobiles and for an approach to said Municipal Auditorium; that said parking lot had a paved surface."

The court found these allegations true and that respondent, as an invitee of appellant, used the parking lot for the purpose of attending a public meeting in the auditorium; that appellant in maintaining and operating the parking lot was acting in a proprietary rather than a governmental capacity; that appellant therefore owed to respondent as an invitee a duty to exercise reasonable care to keep the premises in question reasonably safe; that the parking lot was in an unsafe, dangerous and defective condition; that appellant failed to exercise reasonable care to keep the parking lot in reasonably safe condition and therefore was negligent; and that appellant's negligence was the direct and proximate cause of respondent's injuries.

Appellant assigns as error the court's conclusion of law that the operation of the parking lot is a proprietary function, claiming (1) that the Community Theater and parking lot are governmental functions because they promote the public health, and (2) that operation of the parking lot is governmental, even if the Community Theater were proprietary.

We see no essential difference between the operation of this theater and that of the municipal auditorium which was held a proprietary activity in *Chafor* v. *City of Long Beach,* 174 Cal. 478 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685], and in *Sanders* v. *City of Long Beach,* 54 Cal.App.2d 651 [129 P.2d 511].

The Long Beach auditorium was essentially a hall for public assemblages and gatherings, was not used for any of the

governmental functions of the city. It was constructed and operated under statutory authority for municipal maintenance of a public assembly or convention hall. In the Chafor case, the right of use and occupancy had been given to the Sons of St. George for the celebration of "Empire Day." The auditorium was open to the general public after the Sons of St. George, with the paraders including the mayor and the municipal band, had been admitted. In the Sanders case, it was being used by the city to advertise the city and give instruction to residents and visitors concerning the various departments of the municipality, including the exhibition of motion pictures descriptive of departmental activities, and the general public was invited to attend.

The test for determining whether a particular municipal activity is governmental or proprietary is furnished by the decision in the Chafor case, in these words: "The powers of a municipal corporation are . . . denominated 'governmental, legislative or public; the other, proprietary or private. . . . On distinction of these powers rests the doctrine of the common-law liability of municipal corporations. In its governmental or public character the corporation is made, by the state, one of its instruments, or the local depository of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself. . . . But in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly from considerations connected with the government of the state at large, but for private advantage of the compact community, which is incorporated as a distinct legal personality, or corporate individual; and as to such powers and to property acquired thereunder, and contract made with reference thereto, the corporation is to be regarded *quoad hoc* as a private corporation, or at least not public in the sense that the power of the legislature over it or the rights represented by it, is omnipotent.' " (174 Cal. at pp. 483-484.) "[T]he governmental powers of a city are those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, to caring for the poor, and the education of the young; and in the performance of these functions all buildings and instrumentalities connected therewith come under the application of the principle." (174 Cal. at p. 487.)

 Appellant contends that the Palo Alto Community Theater is a recreational facility maintained, as is a public

park, for the preservation of the public health; hence, a governmental activity. In support of this view, appellant directs attention to the fact that the Palo Alto theater was donated by a philanthropist who in making the donation expressed the desire that it advance the interests of adult recreation activities; that the theater is located in a public park with a number of recreational facilities and performs the same general functions as the park; and that the theater is administered by the city recreation department. In contrast, urges appellant, the Long Beach auditorium was built under authority of statute for use as a public assembly or convention hall; was located on a beach near a municipal pier; and was administered by the board of public works which is usually charged with the operation of utilities and other proprietary ventures.

These do not impress us as distinguishing characteristics. No matter where located nor by what agency administered, the building retains its essential quality as a public meeting place. It is no different in that respect from the Long Beach auditorium, of which the court in the Chafor case said: "True, it was maintained for the benefit of the municipality in the sense that it afforded the populace a meeting place for many forms of amusement and instruction. But in all these respects it differed no whit from any other auditorium or assembly hall built and maintained by private capital for the same purposes." (174 Cal. at p. 489.)

It appears, too, that the contention that a municipal auditorium, like a park, is an instrument to promote the public health, was made in the Sanders case. In overruling that contention, the court said, "Maintenance of public health is a governmental function but operation of a public auditorium, including its use to advertise the owner-city, is a proprietary activity." (54 Cal.App.2d at p. 661.)

In support of the asserted significance of the location of the Palo Alto Community Theater in a public park, appellant directs attention to three decisions which respectively hold that a children's playground (*Law* v. *San Francisco*, 144 Cal. 384 [77 P. 1014]), a public library (*Spires* v. *City of Los Angeles*, 150 Cal. 64 [87 P. 1026, 11 Ann.Cas. 465]), tennis courts and playgrounds (*Caulfield* v. *Berwick*, 27 Cal.App. 493 [150 P. 646]) may properly be located in a public park. Each held it proper to devote a reasonable portion of the park to the activity described, as an activity incidental to park purposes or one which was of convenience to persons using the park. There is nothing in any of them that bears

upon the distinction between governmental and proprietary functions.

It is the nature of the activity, not its location, nor by what department carried on, nor the fact that the facility may also be used for governmental purposes, that determines its proprietary character. Thus, the operation of the belt line railroad as a public carrier, an industrial or business enterprise, is proprietary, even though the service is conducted for the benefit of commerce and without profit (*People* v. *Superior Court*, 29 Cal.2d 754 [178 P.2d 1]) and despite the fact that the fire prevention and extinguishing service conducted by the same operator, the State Harbor Commission, is a governmental function (29 Cal.2d at pp. 759-760). The management and control of a housing project by a housing authority is a business activity of a proprietary nature, and may be considered separately from the welfare purposes of the California Housing Authorities Law, Statutes of Extra Session of 1938, chapter 4, page 9, as amended; Deering's General Laws, Act 3483. (*Muses* v. *Housing Authority*, 83 Cal.App.2d 489 [189 P.2d 305]; see, also, *Manney* v. *Housing Authority*, 79 Cal.App.2d 453 [180 P.2d 69].) As said in the Chafor case, ". . . even in the case of strictly governmental buildings, if the city shall let a portion of one of them to a private tenant, while retaining control of the rest, that tenant is entitled to his recovery for the city's negligent maintenance of his premises. (*Worden* v. *New Bedford*, 131 Mass. 23 [41 Am.Rep. 185].)'' (174 Cal. at p. 488.)

It seems clear, therefore, that the operation of the Palo Alto Community Theater is a proprietary activity even though the theater is situate in a public park and in close proximity to recreational facilities operated by the city in its governmental capacity.

When operating a facility in a proprietary capacity, a city, as does a private operator, owes its invitees the duty of exercising ordinary care for their safety. (*Sanders* v. *City of Long Beach, supra,* 54 Cal.App.2d 651, 655.)

It would seem necessarily to follow that the parking lot, when used by patrons on their way to or from the Palo Alto Community Theater, was operated by appellant in a proprietary capacity. The complaint herein alleged, the answer admitted, the evidence indicated, and the court found that appellant operated the parking lot for the use of persons attending the theater and that appellant invited the persons attending such meetings to use the parking lot for parking

their automobiles and for an approach to the theater.

In the Chafor case, the decedent's death was caused by the collapse of a platform which led from the pier to the auditorium and was used as an approach to the auditorium. (174 Cal. at pp. 479-480.)

The fact that the parking lot may also be used by persons using governmental facilities operated by appellant in the very park in which the Community Theater is located, would not seem to alter its proprietary character when used by patrons of the theater.

As stated by this court in *Dineen* v. *San Francisco*, 38 Cal. App.2d 486 [101 P.2d 736], judicial authorities in other jurisdictions ". . . establish the rule that if a governmental agency permits part or whole of a building to be used for other than governmental purposes, then the agency is generally liable in tort to any person who is injured by reason of the negligent maintenance or operation of the building, if such injury occurs in the common hallways, passages, or yard of such building or in the portion used for nongovernmental purposes." (P. 494.)

Appellant quotes this passage and observes that it deals with decisions that have to do with a "building" or the "back yard to a building," and directs attention to the fact that in the Chafor case the approach to the building was integrally tied up with the building.

In contrast, appellant urges, the parking lot here involved is not a building; nor is it integrated with the Community Theater as might a hallway or a backyard be integrated with it but is used for the whole park and only incidentally for the theater.

These differences do not appear to us significant. Here the complaint alleges and the answer admits that appellant owns and operates "a Municipal Auditorium and a parking lot adjacent thereto for the use of persons attending the meetings in said Municipal Auditorium" and that appellant invites the "persons attending such meetings to use said parking lot for parking their automobiles and for an approach to said Municipal Auditorium." The evidence supports those statements and respondent testified that the parking lot is the normal approach for persons coming by automobile to such meetings. The city owes its invitees, in respect to this approach which it furnishes for their use, the same kind and degree of care for their safety that it owes them in respect to the theater it invites them to attend.

■ Even if the parking lot were operated by appellant in a governmental capacity, the evidence supports the judgment rendered herein. In such a case, municipal liability for injuries resulting from defective condition of a governmental facility, the Public Liability Act (Gov. Code, §§ 1950-2002) requires notice to the city of the defective condition and opportunity to correct the defect. But actual notice is not required when circumstances are such as to furnish a city constructive notice of the defect. (*Maddern* v. *City and County of San Francisco*, 74 Cal.App.2d 742, 749 [169 P.2d 425]; *Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 157 [108 P.2d 989].)

■ In the instant case, the court found that "the dangerous and defective condition of said property should have been known to defendant in the exercise of ordinary care."

The supporting evidence is that the chuckhole, 12 to 18 inches across, was an old hole, and appeared to have been gradually worn in the pavement. The city engineer testified that the base of the parking lot was adobe, covered with 2½ to 3 inches of crushed rock, which in turn was covered with liquid asphalt and screenings about a quarter of an inch thick; that on such a surface, when the base is wet and a crack or some opening appears in the surface, a chuckhole can develop in four or five hours following rains; that about two weeks prior to the accident there was a heavy rainstorm, during which an inch and a half of rain fell; that, according to his recollection, there were no rains of any particular consequence in between those dates; that, as to the time it would take to create a chuckhole like this one, it would depend on the number of cars that would pass a given point and that once a surface disintegrates one-eighth of an inch it will go down 4 or 5 inches in four or five hours, maybe less; and it was his opinion that this hole developed in a rain and very rapidly.

This evidence is sufficient to support the implied finding of the trial court that the defective condition of the pavement of the parking lot existed for a sufficient length of time to give the city constructive notice thereof. (*Maddern* v. *City and County of San Francisco, supra,* 74 Cal.App.2d 742.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.