[Civ. No. 15672. First Dist., Div. One. Feb. 8, 1954.]

LEAH PLAZA, Appellant, v. THE CITY OF SAN MATEO et al., Respondents.

Saul N. Ross for Appellant.

Clark & Heafey, Edwin A. Heafey, Schofield & Hannegan and Gerald P. Martin for Respondents.

FINLEY, J. pro tem.*—This appeal is from a judgment entered in favor of respondents city of San Mateo and Matt Thiltgen after their demurrer to appellant's complaint was sustained without leave to amend.

It is alleged in the complaint that the city of San Mateo is a municipal corporation; that it operated the San Mateo Municipal Golf Course to which the public was invited; that at the time of appellant's injury defendant Tom Fry was employed by the city as a golf professional and respondent Matt Thiltgen as recreational director; that on May 24, 1952, after paying the required admission fee and completing a round of golf, appellant, while at or near her car in the parking lot provided by the city, was struck in the mouth and injured by a golf ball driven from the golf course by defendant Patsy Yeakey.

It is claimed by appellant that the city of San Mateo, Tom Fry and Matt Thiltgen are liable in damages because of their negligence in managing the golf course and in failing to provide proper protection and proper facilities for the protection of paying patrons. It is claimed in particular "that they permitted a dangerous and defective condition to prevail in failing to provide a fence of sufficient height to protect persons using the parking area and clubhouse from golf balls driven by persons using the golf course proper." (C.T. 6.) It is further alleged that for a long time prior to appellant's injury the claimed dangerous and defective condition existed and was known to employees and officers of the city of San Mateo, who possessed the authority to remedy the dangerous and defective condition but that they failed to do so. It is also alleged that appellant presented her claim against the city of San Mateo, Matt Thiltgen and Tom Fry, which claim was rejected.

The complaint is in two counts. In the first Patsy Yeakey is charged with negligence in driving the golf ball which struck appellant. She defaulted. The other defendants are all charged in the second cause of action. Tom Fry, the golf professional, filed his answer.

In sustaining the demurrer of the city of San Mateo and Matt Thiltgen without leave to amend the court ruled in effect that no cause of action founded upon negligence or upon violation of the public liability statutes could be stated against these defendants on account of injury sustained by a

*Assigned by Chairman of Judicial Council.

paying patron who had been struck by a golf ball driven by a third party. The question before us is not whether appellant's present complaint is demurrable, but whether in view of the facts alleged there could possibly be a cause of action stated against the demurring parties.

The powers of a municipal corporation are denominated, on the one hand, governmental, legislative or public; and on the other proprietary or private. (*Chafor* v. *City of Long Beach,* 174 Cal. 478 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685]; *Rhodes* v. *City of Palo Alto,* 100 Cal.App. 2d 336 [223 P.2d 639].)

Whether appellant could state a cause of action outside the scope of the public liability statutes against the city of San Mateo depends upon whether it is acting in its governmental capacity or in its proprietary capacity in operating a public golf course and in charging for the privilege of using its facilities. The significance of this is founded on the well-settled rule that, "When operating a facility in a proprietary capacity, a city, as does a private operator, owes its invitees the duty of exercising ordinary care for their safety." (*Rhodes* v. *City of Palo Alto,* 100 Cal.App.2d 336, 341 [223 P.2d 639]; *Sanders* v. *City of Long Beach,* 54 Cal. App.2d 651 [129 P.2d 511].)

"It is only where statutes give a right of action that an action can be maintained [against a municipality] to recover damages inflicted by a city in the exercise of its governmental functions." (*Pittam* v. *City of Riverside,* 128 Cal. App. 57, at p. 61 [16 P.2d 768]; *Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 P. 505]; *Miller* v. *City of Palo Alto,* 208 Cal. 74 [280 P. 108].) In acting in its governmental capacity its liability is confined to those specific instances set forth in section 53051 of the Government Code, and liability of officers and employees is governed by sections 1953-2002 of that code. Accordingly, there would be liability only for a dangerous or defective condition of public property, and then only if those authorized to remedy the condition had knowledge or notice and failed within a reasonable time to take action to remedy it, or to take action reasonably necessary to protect the public against the condition. If all of the required elements are present, liability would attach, regardless of whether the use to which it is being put is governmental or proprietary in nature. Respondents urge that the complaint does not and cannot state a cause of action against these defendants under Government Code, sections

1953 and 53051. One point urged is that it contains no allegation that the San Mateo Municipal Golf Course is public property owned by the city of San Mateo. It is admitted in respondents' brief, however (page 7), that "Some time subsequent to the adoption and filing of its Charter with the Secretary of State, the City of San Mateo became the owner and operator of the San Mateo Municipal Golf Course." Thus it is obvious that the complaint could have been amended to cure the defect complained of.

Respondents also urge that the only dangerous or defective condition relied upon by appellant to bring the cause of action under the Public Liability Acts is the height of the fence between the golf course proper and the parking lot. This is a specific allegation. It is, however, preceded by more general allegations, and in light of the decision in *Bauman* v. *San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989], we cannot agree that the height of the fence is the only dangerous or defective condition complained of which could fall within the provisions of the Public Liability Acts.

In *Bauman* v. *San Francisco, supra,* 42 Cal.App.2d 144, action was brought under the Public Liability Act on behalf of a 5-year-old child who was struck on the head by a baseball while playing in a sand box in an area set aside for small children on a public playground. The balance of the playground was in lawn and there was no fence or other protection between the area set aside for the small children and the balance of the playground. The baseball was batted by one of a group of boys playing ball on the portion outside the small children's area.

In discussion the court used the following language, at page 152: "There can be no doubt that, under the terms of the Public Liability Act, the liability of the appellant, if any, must be predicated upon a showing that the playground was dangerous or defective." And further on: (p. 153) "It has frequently been stated that no hard-and-fast rule can be laid down as to what constitutes a dangerous or defective condition, but that each case must depend upon its own state of facts. [Citing cases.] It is also well-settled that as a general rule it is a question of fact for the jury to determine whether a given set of facts or circumstances creates a dangerous or defective condition. [Citing cases.]"

And further on in the opinion (p. 153): "The jury was justified in finding that the playground was dangerous and defective for any of the following reasons: That the play-

ground was rendered dangerous or defective by the negligence of appellant in permitting the playing of hard baseball in dangerous proximity to the sand box; that under the circumstances here existing it was the duty of appellant, if hard baseball was to be permitted to be played in the north end of the field, to erect some barrier for the protection of those playing in the small children's section; or the appellant negligently failed to properly supervise the playground by either failing to prevent the boys from playing hard baseball in dangerous proximity to the small children's section or in negligently failing to keep the small children away from the sand box while hard baseball was being played nearby. There can be no doubt that a dangerous or defective condition can be created by the use or general plan of operation of government operated property, as well as by a structural defect." (Citing *Huff* v. *Compton City Grammar Sch. Dist.*, 92 Cal. App. 44 [267 P. 918].)

In *Fackrell* v. *City of San Diego*, 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625], the court in discussing the question of inherent danger in connection with the layout of a city street had this to say, at page 204: "If the improvement is designed to be used without inspection and maintenance and under varying conditions which are normally to be anticipated then it should be made reasonably safe for ordinary use under all of those conditions and if, under any one or more of them, it is, or naturally will become, unsafe for such use because of its planned design then it is inherently dangerous." (See, also, *Moore* v. *Burton,* 75 Cal.App. 395 [242 P. 902] ; *Mulder* v. *City of Los Angeles,* 110 Cal.App. 663 [294 P. 485] ; *George* v. *City of Los Angeles,* 11 Cal.2d 303 [79 P.2d 723] ; *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.*, 28 Cal.App.2d 215 [82 P.2d 216] ; *Bigelow* v. *Ontario*, 37 Cal.App.2d 198 [99 P.2d 298].)

On the question of whether liability attaches under the Public Liability Act where the act of a third person is partially responsible for injury, such as the act here of Patsy Yeakey in driving the golf ball, the court in *Bauman* v. *San Francisco, supra,* 42 Cal.App.2d 144, at page 154, has this to say: "The cases are legion that the question of proximate cause is primarily one of fact for the jury. The negligence of the defendant need not be the sole cause of the injury—as long as it is one of the proximate causes, the mere fact that such negligence concurs with that of an independent actor does not break the chain of causation. [Citing cases.] That this doctrine applies where the negligent act of a third person

concurs with a dangerous or defective condition created by a city in causing an injury, so as to impose liability on the city under the Public Liability Act, was expressly held in *Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747 [43 P.2d 547].'' In the present case we have in substance an almost identical situation as in *Bauman* v. *San Francisco, supra,* 42 Cal.App.2d 144, excepting that a golf course instead of a children's playground is here involved.

It becomes obvious upon reading the complaint that it is vulnerable in its present form to special demurrer in not separately stating different causes of action. Assuming that the city was acting in its governmental capacity, it is also subject to general demurrer under the provisions of Government Code, section 53051, in not alleging or stating facts to show that the San Mateo Golf Course is public property, and further, in not alleging that the dangerous or defective condition complained of was a proximate cause of appellant's injury. There is nothing in the facts alleged, however, to warrant the trial court in sustaining the demurrer without leave to amend.

Turning now to the question of the city's liability for alleged negligence on the part of its agents, officers and employees, there seems to be no positive rule by which it can be determined whether certain functions performed by municipalities are governmental or proprietary in nature. It would not be liable for such negligence unless in operating the golf course it was acting in its proprietary capacity.

Among the activities engaged in by municipalities in California which were held to be proprietary in nature are: A community theater, together with the parking lot used in connection therewith (*Rhodes* v. *City of Palo Alto,* 100 Cal. App.2d 336 [223 P.2d 639]; a muncipal auditorium, *Chafor* v. *City of Long Beach,* 174 Cal. 478 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685]; the operation of a housing project, *Muses* v. *Housing Authority,* 83 Cal.App.2d 489 [189 P.2d 305]; a hospital, *Beard* v. *City & County of San Francisco,* 79 Cal.App.2d 753 [180 P.2d 744]).

Activities conducted by California municipalities which were held to be governmental in nature are: A public playground, (*Schmidt* v. *City of Vallejo,* 122 Cal.App. 5 [10 P.2d 107]; and *Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 P. 505]); the operation of a miniature train in a public park, (*Meyer* v. *San Francisco,* 9 Cal.App.2d 361 [49 P.2d 893]); the operation of a swimming pool, (*Crone* v. *City of El Cajon,*

133 Cal.App. 624 [24 P.2d 846]) ; the maintenance and operation of a boys' summer camp in the mountains, (*Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 P. 505]) ; the operation of a drawbridge, (*Bettencourt* v. *State of California, ante,* p. 60 [266 P.2d 201].)

█ As stated in *Rhodes* v. *City of Palo Alto,* 100 Cal.App. 2d 336, page 341 [223 P.2d 639], and approved in *Guidi* v. *State of California,* 41 Cal.2d 623 [262 P.2d 3] : "It is the nature of the activity, not its location, nor by what department carried on, nor the fact that the facility may also be used for governmental purposes, that determines its proprietary character."

Suffice it to say, without reproducing all of the reasoning that has gone into the subject, that no rule of thumb has been evolved which can be applied with certainty as each case arises. For the present at least, each new activity claiming the courts' attention must be decided on its own peculiar facts. The operation of public parks and playgrounds has been held to be governmental in nature because they promote the public health and partake in no degree of the nature of a private enterprise, (*Schmidt* v. *City of Vallejo, supra,* 122 Cal.App. 5, and *Kellar* v. *City of Los Angeles, supra,* 179 Cal. 605). In the Kellar case the principle was extended to cover a boys' summer camp, not in a public park or playground, but in the mountains, and maintained by the city, at which a weekly fee was charged for board, lodging and care. In *Crone* v. *City of El Cajon, supra,* 133 Cal.App. 624, it may perhaps be said that it was further extended to cover a swimming pool maintained by the city during the summer months "for the *pleasure* of its citizens." (Italics added.) (P. 626.) Small fees were charged but these were not enough to pay the cost of operation.

█ Thus we see that the charging of a fee for use is not the determining factor nor, in view of the Crone case, is physical health alone the distinguishing factor, for it is stated in that case that the swimming pool was maintained "for the *pleasure* of its citizens." (Italics added.) It cannot be denied, however, that swimming is one of the more general and healthful of physical activities.

It would seem, too, that pleasure or amusement and not health would be the principal consideration in an instance such as in *Meyer* v. *San Francisco, supra,* 9 Cal.App.2d 361, where the city was held to be acting in its governmental capacity in operating a miniature train in one of the city parks. In

principle we can see but little difference between the operation of a miniature train in a public park for the pleasure or entertainment of children and their parents and the operation by a city of a community theater with its accompanying parking lot, both situate in a public park, as in *Rhodes* v. *City of Palo Alto, supra,* 100 Cal.App.2d 336, or in the operation by the city of a municipal auditorium, as in *Chafor* v. *City of Long Beach, supra,* 174 Cal. 478. In each case the facility is operated primarily for the business, pleasure or entertainment of the public. Physical exercise or recreation is not involved in either. The only difference is that the miniature train is operated out in the open air while theater and auditorium activities take place inside. This might be considered a public health factor but it has not been so mentioned in the decisions.

It may be said that there is more similarity between the operation of a golf course and a swimming pool or boys' summer camp than there is between the operation of a golf course and a theater or auditorium. But what is the primary purpose behind each of them? █ If any general conclusion is to be drawn from a consideration of the cases, it is that public education, training for self preservation and good citizenship, and the fostering and safeguarding of public health are governmental functions, while the providing of mere amusement or entertainment is not. (*Guidi* v. *State of California,* 41 Cal.2d 623 [262 P.2d 3].) It must be conceded that time spent by a boy in a summer camp is to a degree educational, and if nothing more, training in cooperation and good citizenship. It is a matter of self preservation that all who are physically able should learn to swim for who can tell when it may be a factor in saving not only the life of the swimmer, but also the lives of others.

The underlying purpose behind the playing of a game of golf, however, is undoubtedly pleasure or amusement. True, it provides some exercise and gets the player out into the fresh air and sunshine, but a walk in the park would serve the same purpose. Golf is a game of skill and rivalry, with a decided social aspect, and it is doubtful that most people who play consider health benefits to be the primary objective. Some even ride between shots in small vehicles designed for this purpose, and have caddies to carry their clubs and equipment, which indicates that exercise is for them not the foremost consideration. A golf course does not serve the public generally but only those who play the game. It is designed

for a single purpose, while a public park is devoted to no specific use and serves many purposes for the public in general. Many private golf courses are maintained, some for profit, and others as an adjunct to private clubs or associations. It is true that a public golf course undoubtedly makes the sport available to a segment of our population to which private courses would not be accessible, but this alone does not constitute it a governmental function. It is actually in competition with other courses, and in its clubhouse commercial enterprises usually are carried on where commercial rates are charged for commodities and services.

█ We are satisfied, therefore, that the primary purpose served by the operation of a public golf course is pleasure or amusement, and that in the present case the city of San Mateo was acting in its proprietary capacity and therefore owed its invitees the duty of exercising ordinary care for their safety.

Nothing appears in the complaint to indicate that it cannot be amended, either as to the city of San Mateo or as to Matt Thiltgen. If essential facts are not alleged, and it is not obvious from the complaint that they cannot be supplied, or if distinct causes of action are not separately stated, these deficiencies can be corrected by amendment. (*Coleman* v. *City of Oakland*, 110 Cal.App. 715 [295 P. 59].) █ Unless it is clear that a complaint does not state a cause of action and cannot be so amended as to obviate the objections thereto, it is error to refuse permission to amend. (*Hillman* v. *Hillman Land Co.*, 81 Cal.App.2d 174 [183 P.2d 730].)

The judgment is therefore reversed with instructions to the trial court to permit appellant to amend her complaint.

Peters, P. J., and Bray, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 31, 1954.