[Civ. No. 22025.   Second Dist., Div. Three.   May 13, 1957.]

AVIS D. COLLENBURG, Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

Samuel Maidman for Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment of dismissal entered on the sustaining of defendants' general demurrer to the third amended complaint without leave to amend in an action to recover damages for wrongful death.

The third amended complaint, referred to as the complaint, is in two counts: The first, against defendant County of Los Angeles; the second, against defendant Kirkpatrick. The first count alleges: 1. Plaintiff is the mother of Franklin C. Fay, now deceased. Franklin at the time of his death was of the age of 15 years, 11 months, and 28 days. 2. The County of Los Angeles is a political subdivision of the state. 3. At all times mentioned the County of Los Angeles owned, operated, and maintained a juvenile forestry camp known as Camp Sycamore Canyon located in the county. 4. From March

17, 1955, Franklin had been under detention and held in custody by the county through its agents, including defendant Kirkpatrick. From July 15, 1955, Franklin was assigned to and held in custody in Camp Sycamore Canyon. 5. On September 2, 1955, the county, through its agents, was engaged in fighting a fire located in the vicinity of La Habra Heights in the Puente Hills in the county. The fire "did cause and result in said deceased minor child being burned to death." Franklin was compelled to fight said fire on the "hot line," the same being part of the system and plan and the dangerous condition complained of. 6. The county maintained a system and plan of operation with respect to Camp Sycamore Canyon which was and did create a dangerous condition in that Franklin was subjected to the system and plan, the same being dangerous to his well-being and safety. The system and plan consisted of placing him, without his consent or the consent of plaintiff, in a position of danger in fighting fires without adequate or sufficient training and experience to do so. Franklin, under said system and plan, was compelled to follow such directions and orders as might be imposed on him regardless of his lack of experience and training and without due regard to his safety, well-being, and tender years. 7. The system and plan was in operation and was known to the county to be in operation for a long time prior to the death of Franklin, and was known or should have been known to it to be a dangerous condition. For a reasonable time after acquiring said knowledge of said system and plan the county failed to remedy the dangerous condition or to take action reasonably necessary to protect Franklin against the same. By reason of the knowledge on the part of the county of the dangerous condition and because of its failure to remedy the same, it was guilty of a course of conduct that was negligent, careless, and unlawful in that Franklin should not have been assigned to any duty of such extreme danger as would imperil his life or safety without providing him with adequate, necessary, and proper safeguards for his protection against the hazard to which he was exposed by reason of the system and plan. 8. The county had knowledge of Franklin's age and had knowledge of his lack of experience and adequate training in fighting fires on a "hot line" and of the hazardous condition and lack of protective means to safeguard him against the dangerous condition. The system and plan and dangerous condition was without consideration of such reasonable procedures, training, and direction as would have given adequate and proper pro-

tection to the safety and well-being of Franklin. 9. The county maintained a point or merit system as part of its system and plan; and compliance on the part of Franklin with the same was the only means available to him to obtain his release from the custody, care, and control of the county. 10. The failure of the county to change or modify the system or plan or to take action reasonably necessary to consider his safety, well-being, and protection was negligent, careless, and unlawful. 11. The negligence, carelessness, and unlawfulness of the county was a proximate cause of Franklin's death. 12. Plaintiff sustained damage. 13. A claim was filed with the county within the time allowed by law and was denied.

The second count alleges: 1. Defendant Kirkpatrick was the juvenile forestry director employed by the county and was in charge of the supervision of the activities of Franklin and Camp Sycamore Canyon and in charge of effectuating the system and plan alleged in the first count which caused Franklin's death on the "hot line" while fighting the fire. 2. Kirkpatrick directly ordered Franklin to engage in fighting the fire and to be placed on the "hot line" for that purpose. 3. As a result of said orders, Franklin was burned to death. 4. Franklin's death was the proximate result and caused by the maintenance of the dangerous condition and system which was then and for a long time prior thereto in operation at the camp. 5. Kirkpatrick had notice and knowledge of the dangerous condition. He had the authority and it was his duty to remedy such condition. He failed to take reasonable steps to do so or to give Franklin adequate warning of the danger to which he was exposed. It was the duty of Kirkpatrick to assign Franklin only to such duties as would not endanger his life. He knew or should have known that exposing Franklin to fighting a fire on a "hot line" was a great danger to his life and safety. 6. The conduct of Kirkpatrick was negligent, careless, and unlawful and was a concurring cause of Franklin's death in that he was compelled to comply with Kirkpatrick's directions and to the system and plan. 7. A claim was duly presented to the county and to Kirkpatrick and rejected.

Liability is sought to be imposed on the county under the terms of section 53051 of the Government Code which reads:

"A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

"(a) Had knowledge or notice of the defective or dangerous condition.

"(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

The sufficiency of the first count depends on the answer to the question: Does it allege that Franklin's death resulted "from the dangerous or defective condition of public property?" We think there can be no doubt but that if it is alleged that the fire took place on county property it could not be said that the first count does not state sufficient facts to constitute a cause of action against the county. (*Osborn v. City of Whittier,* 103 Cal.App.2d 609 [230 P.2d 132]; *Pittam v. City of Riverside,* 128 Cal.App. 57 [16 P.2d 768]; *Huff v. Compton City Grammar Sch. Dist.,* 92 Cal.App. 44 [267 P. 918].) There is no allegation in the complaint nor is any fact alleged from which it may be inferred that the fire was in the forestry camp or on property of the county. It would appear from the allegation that the fire was "in and about the vicinity of La Habra Heights in the Puente Hills" that the fire was not in the forestry camp or on property of the county. The same would appear from what was said at the argument. Plaintiff's contention is that the system and plan in operation at the forestry camp was a dangerous condition to which Franklin was exposed.

■ Under the broad language of section 53051 the condition of the public property may be rendered dangerous within the meaning of the statute by "the use or general plan of operation of government operated property, as well as by a structural defect." (*Bauman v. San Francisco,* 42 Cal.App. 2d 144, 153 [108 P.2d 989]; *Harper v. Vallejo Housing Authority,* 104 Cal.App.2d 621, 624-625 [232 P.2d 262]; *Plaza v. City of San Mateo,* 123 Cal.App.2d 103, 108 [266 P.2d 523].) In each of those cases it was the use or general plan of operation of the property itself which created the dangerous condition. In Bauman a small child playing in a sand box in a public playground maintained by the defendant was injured by a ball batted by older children playing hard baseball in the immediate vicinity. The practice of older children playing baseball in the area had continued for some period of time. The court stated (42 Cal.App.2d 153):

"The first and basic element is that the playground was in fact dangerous or defective.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The jury was justified in finding that the playground was dangerous and defective for any of the following reasons: That the playground was rendered dangerous or defective by the negligence of appellant in permitting the playing of hard baseball in dangerous proximity to the sand box; that under the circumstances here existing it was the duty of appellant, if hard baseball was to be permitted to be played in the north end of the field, to erect some barrier for the protection of those playing in the small children's section; or the appellant negligently failed to properly supervise the playground by either failing to prevent the boys from playing hard baseball in dangerous proximity to the small children's section or in negligently failing to keep the small children away from the sand box while hard baseball was being played nearby."

In Harper the negligence alleged was permitting a recreational area owned and operated by the local agency to be so used by drivers and owners of motor vehicles as to render the area dangerous and defective for recreational use. The plaintiff was injured in the recreational area. In Plaza the negligence alleged was permitting a dangerous and defective condition to prevail on a municipally owned golf course. The plaintiff was injured on the parking lot of the course provided by the municipality when struck by a golf ball driven from the course.

*Bryant* v. *County of Monterey,* 125 Cal.App.2d 470 [270 P.2d 897], says that under the statute the agency is liable for the dangerous or defective condition of *its* property. In *Perry* v. *City of Santa Monica,* 130 Cal.App.2d 370 [279 P.2d 92], this court said that the injuries must result from the dangerous or defective condition of public property and that in all the cases "the property was in existence at the time of the accident or had been in existence, and liability was incurred by the local agency because either the property was in a dangerous or defective condition or it was not maintained or replaced after it once had been in existence."

In *Belcher* v. *City & County of San Francisco,* 69 Cal.App. 2d 457 [158 P.2d 996], it was held that the plaintiff had failed to state a cause of action against the city for personal injuries when she was blown over by a strong wind as she was descending steps cut by the city into the sidewalk, since she did

not allege that there was anything dangerous or defective in the construction or design of the steps themselves or that there were any irregularities or defects such as holes, ridges, or upraises upon which a pedestrian might trip or by which one might be entrapped but merely alleged that the city was negligent in failing to provide a handrail and in not posting a warning sign.

*Stang* v. *City of Mill Valley*, 38 Cal.2d 486 [240 P.2d 980], was an action against the city for damage sustained as a result of a fire on the plaintiffs' property. The water lines leading to the fire hydrant adjacent to the plaintiffs' property and the fire hydrant had become clogged and were incapable of providing sufficient water for effective fire control. The court observed (p. 489):

"The ordinary case coming within the terms of this act involves a situation where the injured person is *using* some type of city property that is dangerous or defective, and which he had a legal right to use, such as public streets [citation], highways [citation], buildings [citation], bridges [citation], school grounds [citation], or other similar property [citation]. Likewise the act sustains the imposition of liability in the situation where the city is *using* the dangerous or defective property and injury was proximately caused thereby. . . ."

*Farrell* v. *City of Long Beach*, 132 Cal.App.2d 818 [283 P.2d 296], states (p. 819):

"A child injured accidentally on a public playground cannot recover for his injuries in the absence of proof that he was injured as a result of the dangerous or defective condition of the playground. (Gov. Code, § 53051; *Schmidt* v. *City of Vallejo*, 122 Cal.App. 5, 7, 9 [10 P.2d 107].) It follows that not only is no cause of action stated in the complaint, but it is not possible to allege a valid cause of action for the reason that the playground itself was not directly responsible for plaintiff's injuries.

.   .   .   .   .   .   .   .   .   .   .

"[P. 820.] In the instant action no property was involved but that of plaintiff's playmate. The only negligence alleged was that of the director who asked Dennis to ride along a public street on the handlebars of his friend. Neither nor both can constitute a basis for the city's liability."

■ There being no allegation or contention that the property of the county was dangerous or defective, either by

reason of a structural defect or by reason of the use or general plan of operation of the property itself, the complaint does not state facts sufficient to constitute a cause of action against defendant county.

The second count of the complaint is directed solely against defendant Kirkpatrick. He was superintendent of the camp and in charge of Franklin.

Plaintiff urges that a public officer or employee is personally liable for negligent acts committed in the course of his employment. Defendant asserts that a public officer or employee is not personally liable for errors of judgment while exercising discretionary functions. He argues that the Legislature in the Welfare and Institutions Code has authorized the use of boys committed to forestry camps for fire suppression work; the determination as to the type of work to be performed and the manner in which it is to be performed is a matter of discretion vested in the superintendent of the camp; and there is no liabilty even for errors of judgment in exercising such discretionary functions.

Section 740 of the Welfare and Institutions Code provides that the juvenile court may commit a ward "(g) *To any other State or county institution* now or hereafter established for the purpose of caring for and training persons that come within the provisions of this chapter." Section 901 authorizes the board of supervisors of any county to establish juvenile forestry camps to which boys may be committed by the court. Section 902 provides that such forestry camps shall be in charge of a superintendent. Section 903 reads:

"The boys committed to such camps may be required to labor on the buildings and grounds of the camp, on the making of forest roads for fire prevention or fire fighting, on forestation or reforestation of public lands, or on the making of fire trails and fire breaks, or in fire suppression, or to perform any other work or engage in any studies or activities prescribed or permitted by the superintendent, subject to such approval as the county board of supervisors by ordinance requires."

The camp was maintained and operated for the rehabilitation of juveniles. In operating the camp the county was acting in a governmental capacity. (*Kellar* v. *City of Los Angeles*, 179 Cal. 605 [178 P. 505]; *Schmidt* v. *City of Vallejo*, 122 Cal.App. 5 [10 P.2d 107]; *Crone* v. *City of El Cajon*, 133 Cal.App. 624 [24 P.2d 846]; *Meyer* v. *City & County of San Francisco*, 9 Cal.App.2d 361 [49 P.2d 893];

*McKinney* v. *City & County of San Francisco,* 109 Cal.App. 2d 844 [241 P.2d 1060]; *Williams* v. *City of Alhambra,* 131 Cal.App.2d 262 [280 P.2d 177].)

█ The immunity of a county from liability for negligence does not relieve officers or employees of the county from individual liability for their torts. (*Burns* v. *American Cas. Co.,* 127 Cal.App.2d 198, 205 [273 P.2d 605]; *Falasco* v. *Hulen,* 6 Cal.App.2d 224, 242 [44 P.2d 469].) Every person in public service is subject to the duties of care imposed on him as an individual. A county officer or employee who commits a tortious act is liable therefor. (*Mock* v. *City of Santa Rosa,* 126 Cal. 330, 343-344 [58 P. 826]; *Payne* v. *Baehr,* 153 Cal. 441, 444 [95 P. 895]; *Stewart* v. *McCollister,* 37 Cal.2d 203 [231 P.2d 48]; *Singleton* v. *Bonnesen,* 131 Cal.App.2d 327, 329 [280 P.2d 481].) █ There is no rule prohibiting a suit against a county officer or employee by one injured as a result of the negligence of such officer or employee arising in connection with performance of the duties of his employment. There are certain procedural requirements for enforcing the liability. (Gov. Code, ch. 6, div. 4, tit. 1; *Veriddo* v. *Renaud,* 35 Cal.2d 263, 264 [217 P.2d 647, 894]; *Bettencourt* v. *State,* 139 Cal.App.2d 255 [293 P.2d 472].) *Bettencourt* v. *State, supra,* says (p. 257):

"Generally speaking a plaintiff can bring two types of actions for tort against public officers or employees: (1) He can sue them in their private and individual capacity. This is the normal common law tort action against an indivdual. (See 21 Cal.Jur. 908.) This type of action requires as additional to the pleading of negligence, compliance only with section 1981 (the filing of a claim) [Gov. Code]. (2) He can sue them in their official capacity as municipal officers or employees. This type of action requires not only the filing of a claim under section 1981 but the requirements of section 1953 must also be alleged and proved."

█ The powers and duties of public officers or employees are divided into two classes—discretionary and nondiscretionary. If discretion is exercised and a course of conduct begun, a failure to exercise ordinary care will give rise to liability. There is responsibility in damages where the power given a public officer or employee is exercised but with lack of ordinary care, thereby causing damage to an individual which would not have occurred had the officer or employee exercised the power with ordinary care. Where there is discretion as to the mode of performance and the method to be

employed, the law is settled that in selecting the mode or method reasonable care must be exercised to foresee any injury which reasonably could have been foreseen as the cause of harm by a reasonably prudent person under the circumstances. (*Doeg* v. *Cook,* 126 Cal. 213, 216 [58 P. 707, 77 Am. St.Rep. 171] ; *Kaufman* v. *Tomich,* 208 Cal. 19, 21 [280 P. 130] ; *Dillwood* v. *Riecks,* 42 Cal.App. 602 [184 P. 35].)

One may become liable in an action for tort by doing something he may rightfully do; but wrongfully or negligently doing it by such means, or at such time, or in such manner, that another is injured. (*Perkins* v. *Blauth,* 163 Cal. 782, 786 [127 P. 50] ; *Green* v. *General Petroleum Corp.,* 205 Cal. 328, 333 [270 P. 952, 60 A.L.R. 475].)

*Perkins* v. *Blauth, supra,* states the rule (p. 789) : "If the injury results, however, not from the wrongful plan or character of the work, but from the negligent or improper manner in which it is performed, the one so negligently acting will always be responsible, and the public corporation may or may not be responsible, depending upon the relationship which it must sustain to that agent."

*Dillwood* v. *Riecks,* 42 Cal.App. 602 [184 P. 35], was a suit against San Joaquin County, its supervisors, and its surveyor. The plaintiff kept a stallion on the county fair grounds in a stall rented to him by the county. Grass standing around and near the stall was set on fire and burned by persons confined in the county jail as prisoners acting under the direction of officers and employees of the highway maintenance department of the county. The prisoners and employees of the county negligently permitted the fire to become communicated with the stall, setting it on fire, thereby destroying the stallion. Reversing a judgment for the defendants, the court stated (p. 608) :

"Whether or not the officers connected with the burning of this grass are individually liable presents a more difficult question. In *Doeg* v. *Cook,* 126 Cal. 213 [77 Am.St.Rep. 171, 58 P. 707], it was said that 'the very decided trend of modern decisions is to hold such officers liable for acts of nonfeasance, or for the negligent performance of a duty where the duty is plain, where the means and ability to perform it are shown, and when the performance or nonperformance, or the manner of its performance, involves no question of discretion. In short, where the duty is plain and certain, if it be negligently performed, or not performed at all, the officer is liable at the suit of a private individual especially injured thereby.' . . .

"[P. 610.] Relying upon the distinction made between the discharge of duties plainly and certainly devolved upon the officer, and duties which he may or may not perform at his discretion, it is contended that in the present case the duty to burn the grass as a preventive of damage which might otherwise accrue was discretionary and not compulsory, and hence, under the decision in *Doeg* v. *Cook, supra,* and the rule as stated by Shearman and Redfield, *supra,* [Shearman and Redfield on Negligence, 3d ed., § 156] the defendants are not individually liable.

"The cases involving the question are generally cases arising from the neglect to do some act—cases of nonfeasance rather than misfeasance. It seems to us quite clear that where the power to do the act exists, though its performance is left to the discretion of the officer, if he acts in execution of such discretion, his liability would be the same as in the discharge of a mandatory duty, and if he performs the act or discharges the duty in a negligent manner, he would be liable in an action for damages by a person injured thereby. Whether the duty performed be discretionary or compulsory there is no reason why like consequences should not follow the negligent performance of the duty.

"The rule, as stated by Shearman and Redfield and in *Doeg* v. *Cook,* has reference more particularly to acts of nonfeasance, where it was entirely discretionary with the officer to do or not to do the act. It is perhaps a debatable question whether or not the duty 'to care for, manage, and control' this agricultural park did not impose upon the supervisors a plain and certain duty to burn this dry grass in order to prevent damage to the property itself or to individuals using it, still, having determined that it should be burned and having undertaken to do it, it was their duty to see that the work was not done in a careless and negligent manner, failing in which a liability arose for damages resulting from their negligence."

■ Defendant Kirkpatrick says: "From the allegations, it would appear that the plaintiff is attempting to attack the policy of requiring the boys committed to the Forestry Camps to assist in suppressing fires rather than on the theory of an individual negligent act; and, therefore, there could be no liability on the part of a public officer who was acting in an official capacity in exercising a discretion which his public office required him to exercise." Defendant is in error. The second count is predicated on the negligence of Kirkpatrick

in ordering Franklin to fight the fire on the "hot line." It is specifically alleged that the conduct of Kirkpatrick was negligent and a cause of Franklin's death.

. It is doubtful whether the superintendent of a forestry camp may require boys committed thereto to "labor" in fire suppression off the grounds of the camp. Section 903 of the Welfare and Institutions Code says, "The boys committed to such camps may be required to labor *on the buildings and grounds* of the camp, . . . in fire suppression." (Italics added.) We need not decide that question. If the superintendent has such power and whether it is discretionary or nondiscretionary is of no consequence since it is alleged that the power was negligently exercised. The concept of a reasonably prudent person applies.

Assuming as we must that the allegations of the second count are true, Franklin was a boy just under 16 years of age, without adequate training or experience in fighting fires; Kirkpatrick was superintendent of the camp and an employee of the county (Lab. Code, § 3351, subd. (b)); he was in charge of Franklin's activities; he directed the tortious act—he ordered Franklin to fight the fire and to be placed on the "hot line"; Franklin was compelled to comply with his directions; he knew or should have known that exposing Franklin to fighting the fire on the "hot line" would endanger his life; he failed to give Franklin adequate warning of the danger to which he was exposed; the conduct of Kirkpatrick was negligent and a concurring cause of Franklin's death; a claim was filed and rejected as required by the statute. These facts are sufficient to constitute a cause of action against defendant Kirkpatrick. (*Bates* v. *Escondido U. H. Sch. Dist.*, 133 Cal.App. 725, 731-732 [24 P.2d 884].)

What constitutes a reasonable degree of care under the facts alleged is a question for the trier of fact. (*Wurzburger* v. *Nellis*, 165 Cal. 48, 52 [130 P. 1052]; *Black* v. *Southern Pac. Co.*, 124 Cal.App. 321, 330 [12 P.2d 981].)

The judgment in favor of defendant County of Los Angeles is affirmed; the judgment in favor of defendant Kirkpatrick is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

The petitions of appellant and of respondent Kenneth E. Kirkpatrick for a hearing by the Supreme Court were denied July 10, 1957. Carter, J., was of the opinion that the petitions should be granted.